DAVID B. SHANIES LAW OFFICE
David B. Shanies
Joel A. Wertheimer
Deborah I. Francois
411 Lafayette Street, Sixth Floor
New York, New York 10003
(212) 951-1710 (Tel)
(212) 951-1350 (Fax)
*david@shanieslaw.com*
*joel@shanieslaw.com*
*deborah@shanieslaw.com*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ANDRE ADAMS,

                Plaintiff,

  — against —

PATRICK QUIGLEY, CRAIG LUPARDO,
DANIEL DELPINO, and THE CITY OF NEW
YORK.

                Defendants.

---

Case No. 19-CV-1662 (ENV) (RER)

**PLAINTIFF'S MEMORANDUM
IN OPPOSITION TO
DEFENDANTS' MOTION
<u>FOR SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

Preliminary Statement ..................................................................................................1

Statement of Facts .......................................................................................................1

Legal Standard.............................................................................................................6

Argument .....................................................................................................................7

I.   Plaintiff's Claim for Malicious Prosecution Is Amply Supported ...........................7

    A.   Plaintiff's Criminal Proceedings Terminated in His Favor ............................8

        1.   Whether a Termination Is Favorable Depends on the Totality of the
           Circumstances........................................................................................8

        2.   Plaintiff's ACD with Immediate Sealing Was a Favorable Termination ...............9

        3.   The Dismissal of Plaintiff's Charges in the Interest of Justice Was a Favorable
           Termination .........................................................................................12

    B.   Video Evidence Establishes That Defendants Had No Probable Cause to Commence
        Plaintiff's Criminal Proceedings ...................................................................14

    C.   Evidence in the Record Demonstrates that Defendants Acted with Actual Malice......17

II.   Plaintiff Satisfies Any Favorable-Termination Requirement Imposed by *McDonough* to
    Allege a Claim for Fabrication of Evidence ..........................................................18

    A.   Affirmative Indications of Innocence Are Not Necessary for Fabricated-Evidence
        Claims ...........................................................................................................19

    B.   *McDonough v. Smith* Did Not Overrule Second Circuit Caselaw Defining the Nature
        and Elements of Fabricated-Evidence Claims ...............................................21

    C.   Acceptance of an ACD Is a Favorable Termination for Purposes of a
        Fabrication Claim..........................................................................................24

    D.   A Dismissal in the Interest of Justice Is a Favorable Termination for Purposes of a
        Fabrication Claim..........................................................................................26

III.   Defendants Falsely Arrested Plaintiff for Assault, Resisting Arrest, and Obstructing
    Governmental Administration...............................................................................27

    A.   Defendants Had No Probable Cause to Arrest Plaintiff for Assault, Resisting Arrest,
        and Obstructing Governmental Administration ...........................................27

    B.   Defendants Are Not Entitled to Qualified Immunity Because There Was No Arguable
        Probable Cause..............................................................................................30

IV.   Plaintiff Sufficiently Alleges a Claim for Municipal Liability ..............................31

Conclusion.................................................................................................................34

# TABLE OF AUTHORITIES

**Cases**

*Ackerson v. City of White Plains*, 702 F.3d 15 (2d Cir. 2012) ......................................................34

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)...................................................................7

*Batista v. Rodriguez*, 702 F.2d 393 (2d Cir. 1983)...................................................................37

*Bellamy v. City of New York*, 914 F.3d 727 (2d Cir. 2019)......................................................36

*Boyd v. City of New York*, 336 F.3d 72 (2d Cir. 2003)..................................................................19

*Caldarola v. Calabrese*, 298 F.3d 156 (2d Cir. 2002) .................................................................7

*Cameron v. City of New York*, 598 F.3d 50 (2d Cir. 2010).......................................................33

*Chambers v. County of Nassau*, No. CV 19-cv-0158, 2020 U.S. Dist. LEXIS 14984, at *8
(E.D.N.Y. January 28, 2020)...............................................................................................14

*Coleman v. City of New York*, No. 11-cv-2394, 2013 U.S. Dist. LEXIS 206709, at *4 n.4
(E.D.N.Y. Oct. 24, 2013.....................................................................................................13

*Collins v. City of New York*, 923 F. Supp. 2d 462 (E.D.N.Y. 2013) .............................................37

*Colon v. City of Rochester*, 419 F. Supp. 3d 586 (W.D.N.Y. 2019) .............................................29

*Conway v. Village of Mount Kisco*, 750 F.2d 205 (2d Cir. 1984) ...............................................23

*Curry v. City of Syracuse*, 316 F.3d 324 (2d Cir. 2003).............................................................32

*Dettelis v. Sharbaugh*, 919 F.3d 161 (2d Cir. 2019) .....................................................................8

*Dufort v. City of New York*, 874 F.3d 338 (2d Cir. 2017) ....................................................32, 33

*Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)....................................................................31

*Fulton v. Robinson*, 289 F.3d 188, 196 (2d Cir. 2002)................................................................12

*Galgano v. County of Putnam*, No. 16-cv-3572, 2020 U.S. Dist. LEXIS 116682, at *28-29
(S.D.N.Y. July 2, 2020)......................................................................................................22

*Ganek v. Leibowitz*, 874 F.3d 73 (2d Cir. 2017) .........................................................................30

*Garnett v. Under Cover Officer C0039*, 838 F.3d 265, (2d Cir. 2016) ........................................21

*Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002) .............................................................................7

*Giglio v. United States*, 405 U.S. 150 (1972)..............................................................................24

*Guzman v. City of New York*, No. 08-cv-2853, 2010 U.S. Dist. LEXIS 108410, at *10 (E.D.N.Y.
Oct. 13, 2010)...................................................................................................................37

*Heck v. Humphrey*, 512 U.S. 477 (1994) .............................................................................22, 27

*Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94 (2d Cir. 2000) .....................................36

*Hincapie v. City of New York*, 434 F. Supp. 3d 61 (S.D.N.Y. 2020) ............................................30

*Hygh v. Jacobs*, 961 F.2d 359 (2d Cir. 1992)..............................................................................14

*Jaegly v. Couch*, 439 F.3d 149 (2d Cir. 2006) ...............................................................32

*Kalin v. Xanboo, Inc.*, 526 F. Supp. 2d 392 (S.D.N.Y. 2007) ........................................36

*Landers v. City of New York*, No. 16-cv-5176, 2019 U.S. Dist. LEXIS 49352, at *21-22 (E.D.N.Y. Mar. 22, 2019)...........................................................................................34

*Lanning v. City of Glens Falls*, 908 F.3d 19 (2d Cir. 2018)..................................*passim*

*Lowth v. Town of Cheektowaga*, 82 F.3d 563 (2d Cir. 1996)........................................19

*Mallory v. United States*, 354 U.S. 449, 455, (1957) ...................................................32

*Manganiello v. City of New York*, 612 F.3d 149 (2d Cir. 2010) ......................................8

*Martinez v. Simonetti*, 202 F.3d 625 (2d Cir. 2000 ......................................................34

*Marvel Characters, Inc. v. Simon*, 310 F.3d 280 (2d Cir. 2002)..................................7, 8

*Maryland v. Pringle*, 540 U.S. 366, 371 (2003)...........................................................33

*McDonough v. Smith*, 139 S. Ct. 2149 (2019)..........................................................*passim*

*Miller v. Terrillion*, 436 F. Supp. 3d 598 (E.D.N.Y. 2020)...........................................29

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)....................................................36

*Moore v. Comesanas*, 32 F.3d 670 (2d Cir. 1994) ......................................................32

*Morris v. Martin*, No. 16-cv-601, 2019 U.S. Dist. LEXIS 183610, at *14-15 (N.D.N.Y. Oct. 23, 2019)..............................................................................................................18

*Mortimer v. Wilson*, No. 15 Civ. 7186 (2020 U.S. Dist. LEXIS 118908, at *38 n.11 (S.D.N.Y. July 7, 2020) ...................................................................................................................30

*Murphy v. Lynn*, 118 F.3d 938 (2d Cir. 1997)................................................9, 10, 15

*Nardelli v. Stamberg*, 44 N.Y.2d 500 (1978) ..............................................................19

*Nelson v. County of Suffolk*, No. 12-CV-5678, 2019 U.S. Dist. LEXIS 143094, at *29-30 (E.D.N.Y. Aug. 22, 2019) ...........................................................................................30

*Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171 (2d Cir. 2003).................7, 18

*Ohio v. Robinette*, 519 U.S. 33 (1996) ........................................................................10

*People v. Rivera*, 46 A.D.3d 349 (1st Dep't 2007) ......................................................32

*People v. Stevenson*, 31 N.Y.2d 108 (1972)................................................................32

*Poventud v. City of New York*, 750 F.3d 121 (2d Cir. 2014)..........................................24

*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123 (2d Cir. 1997) ...............................*passim*

*Roberts v. City of Fairbanks*, 947 F.3d 1191 (9th Cir. 2020)........................................26

*Rosario v. City of New York*, No. 18-cv-4023, 2019 U.S. Dist. LEXIS 159771, at *11 (S.D.N.Y. Sept. 16, 2019).........................................................................................................10

*Ross v. City of New York*, No. 17 Civ. 3505, 2019 U.S. Dist. LEXIS 169762, at *19 (E.D.N.Y. Sept. 30, 2019)..........................................................................................................26

*Sanders v. City of New York*, No. 12-cv-113, 2015 U.S. Dist. LEXIS 42698, at *27, *49-55 (E.D.N.Y. Jan. 7, 2015) ....................................................................................................17

*Simon v. City of New York*, No. 16-CV-1017, 2020 U.S. Dist. LEXIS 47919, at *16 (E.D.N.Y. Mar. 19, 2020) ..........................................................................................................22, 24, 31

*Singleton v. New York*, 632 F.2d 185 (2d Cir. 1980).................................................................11, 23

*United States v. Agurs*, 427 U.S. 97 (1976)......................................................................................24

*United States v. Hightower*, 950 F.3d 33 (2d Cir. 2020)..................................................................26

*Victory v. Pataki*, 814 F.3d 47 (2d Cir. 2016) ...................................................................................7

*Virgil v. City of New York*, No. 17-cv-5100, 2019 U.S. Dist. LEXIS 167081, at *18-19 (E.D.N.Y. Sept. 27, 2019)..........................................................................................................................10

*Walczyk v. Rio*, 496 F.3d 139 (2d Cir. 2007) ..................................................................................32

*Washington v. County of Rockland*, 373 F.3d 310 (2d Cir. 2004) ...................................................8

*Weyant v. Okst*, 101 F.3d 845 (2d Cir. 1996) .................................................................................32

*Wharton v. County of Nassau*, No. 07-cv-2137, 2010 U.S. Dist. LEXIS 99174, *20-21 (E.D.N.Y. Sept. 20, 2010).....................................................................................................................18, 20

## Statutes

42 U.S.C. § 1983 ................................................................................................................8, 9, 25, 32

N.Y. Crim. Proc. L. § 160.50 ............................................................................................................13

N.Y. Crim. Proc. Law § 170.55 ..................................................................................................11, 29

N.Y. Pen. Law § 120.00 ....................................................................................................................35

N.Y. Pen. Law § 195.05 ....................................................................................................................35

N.Y. Pen. Law § 205.30 ....................................................................................................................35

## Rules

Fed. R. Civ. P. 15 ..............................................................................................................................33

Fed. R. Civ. P. 56 ................................................................................................................................6

## PRELIMINARY STATEMENT

This is a case of repeated police misconduct.  First, Individual Defendants Patrick Quigley, Craig Lupardo, and Daniel Delpino arrested Plaintiff Andre Adams without justification, later falsely accusing him of possessing marijuana.  Then, after pulling Plaintiff down the stairs or, at best, slipping and falling down with him, Individual Defendants falsely accused Plaintiff, in a sworn writing, of throwing himself down a flight of stairs as a way of assaulting a police officer.  Now, Individual Defendants, along with Defendant the City of New York, move for summary judgment, asserting that what can be seen on video constitutes undisputed evidence that Plaintiff caused himself and an officer to fall down a flight of stairs.  To the contrary, the video demonstrates that Plaintiff did not cause the fall and the Individual Defendants did not believe he had.  In fact, Defendant Delpino – the officer who the City now claims was thrown down the stairs by Plaintiff – gets up, without any apparent difficulty or assistance, and continues to walk down a second flight of stairs with Plaintiff.

Prosecutors, upon seeing the video, moved to dismiss Plaintiff's criminal case in its entirety.  The prosecutors unliterally dismissed the assault charges in the interests of justice, not on procedural grounds, but because the assault charges were unsupported.  Then, on his final court appearance, the prosecution agreed to an adjournment in contemplation of dismissal ("ACD") with immediate sealing, a disposition that is not provided for under the ACD statute and is indicative of Mr. Adams's innocence.

## STATEMENT OF FACTS

Andre Adams was sitting in a doorway at 456 Richmond Terrace on Staten Island at the same time three New York City police officers conducted a "vertical" – a search of an apartment building that would not be legal but for the fact that the building consists of public

housing units.  (*See* Pl.'s Counterstatement of Material Facts Pursuant to Local Rule 56.1 in Opp'n to Defs.' Mot. for Summ. J. ("Rule 56.1 Counterstatement") ¶¶ 1, 3, 4, 10.)  Mr. Adams was watching boxing highlights of Marcus Browne – who was from Staten Island – with his neighbor, Dwayne Thompson, who also knew the fighter.  (Decl. of David B. Shanies ("Shanies Decl."), Ex. 1 (Adams Dep. Tr.), at 100:17-20, 113:2-114:20.)  They were on the second floor of the building, sitting in the doorway of the neighbor's apartment so that they could still hear Mr. Adams's grandmother, whom he was caring for, if she needed anything from him while he was in the hallway.  (*See id.* at 21:10-16, 113:12-18.)

As they sat there, Dwayne's brother, David Thompson, came out of the elevator with a woman.  (*Id.* at 117:15-22.)  Mr. Adams and Dwayne greeted them, and shortly thereafter, three police officers – Defendants Sergeant Patrick Quigley, Officer Craig Lupardo, and Daniel Delpino – came out of the stairwell and almost immediately placed David in handcuffs.  (*Id.* at 117:23-118:4; Rule 56.1 Counterstatement ¶ 16.)  The officers recovered marijuana from David.  (Rule 56.1 Counterstatement ¶¶ 14-15.)  Almost immediately thereafter, Mr. Adams's brother – Kissoon Adams – came out of their grandmother's apartment to take out the garbage.  (*See id.* ¶ 17; Shanies Decl., Ex. 1 (Adams Dep. Tr.), at 106:16-23.)  As he stepped out of the apartment with the garbage, he asked "what's going on."  (Shanies Decl., Ex. 1 (Adams Dep. Tr.), at 124:16-18.)

Within seconds, Mr. Adams and his brother Kissoon were also handcuffed, without any justification.  (*Id.* at 124:18-125:4.)  Officer Delpino handcuffed Mr. Adams without incident.  (*Id*. at 140:3-9; Shanies Decl., Ex. 4 (T.R.I. Incident Report), at DEF081.)  The officers later issued Kissoon a summons for disorderly conduct.  (*See* Shanies Decl., Ex. 3 (Quigley Memo Book), at DEF011.)  Mr. Adams, knowing he had done nothing illegal, repeatedly asked

the officers why he was being arrested.  (*See* Shanies Decl., Ex. 1 (Adams Dep. Tr.), at 125:2-9; Shanies Decl., Ex. 2 (Crim. Ct. Compl.), at DEF024.)

After the police placed David, Kissoon, and Mr. Adams in handcuffs, neighbors peered out of their apartment doors to see what was happening.  (*See* Shanies Decl., Ex. 1 (Adams Dep. Tr.), at 145:17-20.)  The officers summoned additional officers to the scene.  (Rule 56.1 Counterstatement ¶ 28.)  While they were standing in the hallway waiting for the other officers to arrive, Sergeant Quigley threatened to strip search Mr. Adams.  (Shanies Decl., Ex. 1 (Adams Dep. Tr.), at 125:1-4, 141:2-12.)  Sergeant Quigley also threatened Mr. Adams by saying in his ear "you wanna go down the steps."  (Declaration of Andre Adams ("Adams Decl.") ¶ 2.)  Mr. Adams began to tell the officers "don't throw me down the stairs."  (Rule 56.1 Counterstatement ¶ 25.)  The officers did not use the elevators, which were just at the end of the hallway, and instead elected to use the stairs.  (*See* Shanies Decl., Ex. 1 (Adams Dep. Tr.), at 109:8-111:24; Shanies Decl., Ex. 6 (Delpino Dep. Tr.), at 33:16-20, 34:10-13.)  At this point, Mr. Adams became concerned that the officers would follow through with Sergeant Quigley's threat.  (Adams Decl. ¶ 3.)

The officers then escorted the three men down the stairwell.  (*See* Rule 56.1 Counterstatement ¶¶ 38, 39, 46.)  Officer Delpino took Mr. Adams down the stairwell from the second floor to the first-floor landing.  (*See id.* ¶ 39.)  The two were linked arm-in-arm, with Mr. Adams handcuffed.  (Shanies Decl., Ex. 6 (Delpino Dep. Tr.), at 27:13-15, 40:11-13.)  As they walked down the stairwell, Officer Delpino was slightly ahead of Mr. Adams, with the stairwell not wide enough to fit the two of them side by side.  (*See* Shanies Decl., Ex. 5 (Stairwell Video).)  Part of the way down the first flight of stairs, Mr. Adams felt Officer Delpino tug on his arm. (Shanies Decl., Ex. 1 (Adams Dep. Tr.), at 146:6-10, 148:5-10; Adams Decl. ¶ 4; *see also*

Shanies Decl., Ex. 5 (Stairwell Video).)  As a result, Mr. Adams's foot slipped and both men tumbled down the remaining stairs.  (Shanies Decl., Ex. 5 (Stairwell Video).)

After the two fell to the landing at the first floor of the stairwell, they can be seen trying to stand up, with legs flailing.  (*Id*.)  Officer Lupardo was walking behind Officer Delpino and Mr. Adams and had just started coming down the stairs when Plaintiff and Officer Delpino fell.  (*See* Rule 56.1 Counterstatement ¶ 46.)  Officer Lupardo stopped at the landing briefly and kept moving down from the first-level landing to the ground floor, descending a second set of stairs.  (*See id.* ¶ 47; Shanies Decl., Ex. 5 (Stairwell Video).)  Officer Delpino and Mr. Adams then stood up, with Mr. Adams hunched over, and proceeded to walk down the next set of stairs. (Shanies Decl., Ex. 5 (Stairwell Video).)  Officer Delpino did not ask for help or mention to the other officers present that Mr. Adams had assaulted him or done anything else wrong while on the stairwell.  (Shanies Decl., Ex. 6 (Delpino Dep. Tr.), at 47:11-23, 50:17-19; Shanies Decl., Ex. 7 (Lupardo Dep. Tr.), at 56:10-11.)

Mr. Adams informed officers that he needed medical attention, first thinking that his arm was broken, and then for injuries to his back and ribs.  (Shanies Decl., Ex. 1 (Adams Dep. Tr.), at 149:23-24, 152:4-11, 158:12-18, 183:13-19, 185:19-20.)  Officer Delpino, who had gone down the same set of stairs as Mr. Adams, was taken to the hospital and treated for injuries, which ultimately kept him out of work.  (*See* Rule 56.1 Counterstatement ¶¶ 52-55.)  Mr. Adams, his brother Kissoon, and David Thompson were then transported to the 120th Precinct and taken to holding cells.  (*See id.* ¶ 56.)  Kissoon and David were released with summonses.  (*See id.* ¶ 57.)  David was given a summons for possession of marijuana, and Kissoon for disorderly conduct.  (*See id.* ¶ 15, 57; Shanies Decl., Ex. 3 (Quigley Memo Book), at DEF011.)  Mr. Adams was not released.  (*See* Shanies Decl., Ex. 1 (Adams Dep. Tr.), at 171:12-16.)

Mr. Adams was then interrogated by Sergeant Quigley and Captain Andrew Hillery and photographed by Captain Hillery.  (*Id.* at 165:23-174:14; Shanies Decl., Ex. 8 (Photos).)  The officers attempted to pressure Mr. Adams into stating that he had no physical injuries, promising to release him if he cooperated.  (*See* Shanies Decl., Ex. 1 (Adams Dep. Tr.), at 166:21-167:6, 170:11-171:8.)  Sergeant Quigley created a medical treatment of prisoner form that Mr. Adams refused to sign because it stated that he had no injuries.  (*Id.* at 179:3-5, 179:18-180:2; Shanies Decl., Ex. 9 (Medical Treatment of Prisoner Form), at DEF 067.)  The officers photographed Mr. Adams to attempt to demonstrate he had no injuries as a result of the fall.  (Shanies Decl., Ex. 1 (Adams Dep. Tr.), at 165:23-167:9; Shanies Decl., Ex. 8 (Photos).)

Rather than release Mr. Adams, who had been arrested without justification, the officers charged Mr. Adams with assaulting Officer Delpino.  (*See* Rule 56.1 Counterstatement ¶ 63.)  Officer Lupardo completed a criminal court complaint falsely stating that Mr. Adams possessed marijuana when he was arrested, even though Mr. Adams never had any marijuana.  (*See id.* ¶ 64; Shanies Decl., Ex. 1 (Adams Dep. Tr.), at 121:21-123:9; Adams Decl. ¶ 5.)  Officer Lupardo, with information from Officer Delpino, also put in the complaint that Mr. Adams possessed marijuana and had "intentionally lunged his body" down the stairs, assaulting Officer Delpino.  (Shanies Decl., Ex. 2 (Crim. Ct. Compl.), at DEF024.)  Mr. Adams was charged with six offenses based upon the officers' fabricated affidavit: 1. Assault in the Second Degree (P.L. 120.05 (3)); 2. Assault in the Third Degree (P.L. 120.00(1)); 3. Resisting Arrest (P.L. 205.30); 4. Obstructing Governmental Administration in the Second Degree (P.L. 195.05); 5. Criminal Possession of Marihuana in the Fifth Degree (P.L. 220.10(1)); and 6. Unlawful Possession of Marihuana (P.L. 221.05).  (*See* Rule 56.1 Counterstatement ¶ 63.)

Mr. Adams remained in the holding cell at the 120th Precinct despite his injuries. (*See* Shanies Decl., Ex. 1 (Adams Dep. Tr.), at 174:20-176:3.)  Eventually, after the arresting officers had left the precinct, Mr. Adams was able to convince a new officer to obtain medical attention for him, given his fall down the stairs and the pain he was suffering.  (*See id.* at 176:1-6.)  Mr. Adams was sent to Richmond University Medical Center, where he was x-rayed and treated.  (*Id.* at 194:14-16, 196:19-198:21.)  He received medication for his injuries.  (*See id.* at 198:20-21.)  He was then transported back to the precinct, before being arraigned on the trumped-up felony and misdemeanor charges.  (*See id.* at 199:20-200:8.)  Bail was then set and paid.  (*Id.* at 206:10-12, 208:22-23.)

Mr. Adams was forced to attend numerous court hearings after that date, at which his charges were repeatedly downgraded and eventually dismissed.  (*See* Shanies Decl., Ex. 10 (Ct. Conference Trs).)  First, the felony assault charges were dismissed unilaterally by the prosecution.  (*Id.* at DEF817.)  Then, at Mr. Adams's second-to-last court date, he was offered an ACD, and he refused the offer.  (*Id.* at DEF886-88.)  At that conference, prosecutors made clear that they would withdraw the offer and proceed to trial if it were not accepted.  (*Id.* at DEF887-88.)  After that court date, the prosecutors then agreed to an "ACD with immediate sealing," which effectively ended the criminal proceeding.  By operation of state law, Mr. Adams was restored to his prior position as though the arrest had never occurred.  (*See id.* at DEF890; N.Y. Crim. Proc. L. § 170.55(8).)

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for

the nonmoving party.'" *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A fact is material when it "might affect the outcome of the suit under the governing law."  *Id.* (quoting *Anderson*, 477 U.S. at 248).  The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists.  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citations omitted).  In turn, to defeat a motion for summary judgment, the opposing party must raise a genuine issue of material fact.  *See Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002).  In determining whether such an issue exists, the court must construe the evidence in the light most favorable to the opposing party and draw all inferences in that party's favor.  *See Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (citations omitted).  However, "a court must not 'weigh the evidence, or assess the credibility of witnesses, or resolve issues of fact.'"  *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) (citation omitted).  Summary judgment is therefore "improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party."  *Marvel*, 310 F.3d at 286.

## ARGUMENT

## I.  Plaintiff's Claim for Malicious Prosecution Is Amply Supported

"To state a 42 U.S.C. § 1983 claim for malicious prosecution, a plaintiff must plead both 'a violation of his rights under the Fourth Amendment' and 'the elements of a malicious prosecution claim under state law.'"  *Dettelis v. Sharbaugh*, 919 F.3d 161, 163 (2d Cir. 2019) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010)).  Under the Fourth Amendment, a malicious prosecution claim requires a plaintiff to show "a seizure or other perversion of proper legal procedures implicating [his] personal liberty and privacy interests."  *Lanning v. City of Glens Falls*, 908 F.3d 19, 24 (2d Cir. 2018) (alteration in original)

(quoting *Washington v. County of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004)). He must also demonstrate, as required under New York law, "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions." *Dettelis*, 919 F.3d at 163-64 (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)). Here, the first malicious prosecution element is undisputed. Thus, to prevail on summary judgment, Defendants must demonstrate that Plaintiff cannot satisfy the remaining three. Defendants cannot meet that burden.

### A.    Plaintiff's Criminal Proceedings Terminated in His Favor

First, summary judgment is not warranted on Plaintiff's malicious prosecution claim because the criminal proceedings against Plaintiff resulted in a favorable termination. Specifically, four of the six charges against Plaintiff were dismissed following an unconditional adjournment in contemplation of dismissal with immediate sealing, and the remaining two charges against Plaintiff were dismissed in the interest of justice. Immediate sealing is not provided for under Section 170.55 of the New York Criminal Procedure Law and, as discussed below, accordingly does not fall under extant Second Circuit case law regarding favorable terminations. Based on Second Circuit precedent and the totality of the circumstances, such dispositions satisfy malicious prosecution's favorable-termination requirement.

### 1.    Whether a Termination Is Favorable Depends on the Totality of the Circumstances

The "favorable termination" element of a § 1983 malicious prosecution claim requires "affirmative indications of innocence." *Lanning*, 908 F.3d at 25. Because such a claim arises out of the Fourth Amendment's prohibition on unreasonable seizures, whether a plaintiff received a favorable termination is determined, as with any Fourth Amendment claim, by

"reasonableness."  *See id.* at 28.  Reasonableness is, in turn, "measured in objective terms by examining the totality of the circumstances."  *Id.* (quoting *Ohio v. Robinette*, 519 U.S. 33, 39 (1996)); *see also Ohio*, at 519 U.S. at 39 ("In applying this test we have consistently eschewed bright-line rules, instead emphasizing the fact-specific nature of the reasonableness inquiry.").  Accordingly, "[n]o single type of disposition is necessary or sufficient" for a favorable termination.  *Rosario v. City of New York*, No. 18-cv-4023 (LGS), 2019 U.S. Dist. LEXIS 159771, at *11 (S.D.N.Y. Sept. 16, 2019).  Rather, "[t]he answer to whether termination is indicative of innocence depends on the nature and circumstances of the termination; the dispositive inquiry is whether the failure to proceed impl[ies] a lack of reasonable grounds for prosecution."  *Virgil v. City of New York*, No. 17-cv-5100 (PKC) (SMG), 2019 U.S. Dist. LEXIS 167081, at *18-19 (E.D.N.Y. Sept. 27, 2019) (second alteration in original) (quoting *Murphy*, 118 F.3d at 948).

### 2.   Plaintiff's ACD with Immediate Sealing Was a Favorable Termination

Under the Fourth Amendment's reasonableness standard, the dismissal of Plaintiff's charges pursuant to an ACD with immediate sealing is an affirmative indication of his innocence and therefore a favorable termination for purposes of malicious prosecution.

As set forth in Section 170.55 of the New York Criminal Procedure Law, an ACD is "an adjournment of the action without date ordered with a view to ultimate dismissal of the accusatory instrument in furtherance of justice."  N.Y. Crim. Proc. Law § 170.55(2).  Section 170.55 further provides that "[u]pon application of the people, made at any time not more than six months . . . after the issuance of such order, the court may restore the case to the calendar upon a determination that dismissal of the accusatory instrument would not be in furtherance of justice, and the action must thereupon proceed."  *Id.*  If the case is not so restored within the six-

month period, "the accusatory instrument is, at the expiration of such period, deemed to have been dismissed by the court in furtherance of justice." *Id.*  Importantly, Section 170.55 provides that "[n]o person shall suffer any disability or forfeiture as a result of" an order granting an ACD. N.Y. Crim. Proc. Law § 170.55(8).  "Upon the dismissal of the accusatory instrument pursuant this section, the arrest and prosecution shall be deemed a nullity and *the defendant shall be restored, in contemplation of law, to the status he occupied before his arrest and prosecution.*" *Id.*

In *Singleton v. New York*, 632 F.2d 185 (2d Cir. 1980), the seminal case for the proposition that an ACD is not indicative of innocence, the Second Circuit focused on the statute's six-month waiting period.  The court noted that this "six-month hiatus between adjournment and dismissal is especially significant," as it is "a period of observation, during which time the defendant's behavior may be observed to determine whether the prosecutor's acquiescence in the adjournment was justified." *Id.* at 194.  Since *Singleton*, the Second Circuit has viewed ACDs as a "conditional dismissal" because an ACD ordinarily becomes final only *after* this six-month period and "allows the state to pursue the criminal prosecution in the interests of justice during the conditional period." *Fulton v. Robinson*, 289 F.3d 188, 196 (2d Cir. 2002) (citation omitted).  In this action, however, Plaintiff's charges were *immediately* sealed, without the six-month waiting period set forth in Section 170.55.  As such, *Singleton*, which dealt only with ACDs followed by a conditional period, rather than ACDs with immediate sealing like the one at issue here, is not controlling.[1]

---

[1]. ACDs without immediate sealing should also be considered favorable terminations, and *Singleton* and its progeny of cases holding otherwise should be overturned.  Indeed, the Honorable Jack B. Weinstein discussed at length in his dissent in *Singleton* why ACDs are "in all respects" favorable to the criminal defendant.  632 F.2d at 197 (Weinstein, J., dissenting).  Any defendant "would consider it a victory, not a defeat, to have a case dismissed without the necessity for a trial and particularly under a statutory scheme that requires . . . sealing of all agency records showing that a prosecution had ever taken place." *Id.* at 196-97.  As Judge Weinstein observed, ACDs under the New York statutory scheme are "unlike other pretrial diversion programs which are premised upon an

Instead, under *Lanning*, the totality of the circumstances demonstrates that Plaintiff's ACD was a declination to prosecute ("DP") in everything but name, and that the prosecutors' decision not to proceed was based on a lack of reasonable grounds for prosecution. At the hearing prior to the termination of his charges, Plaintiff rejected the prosecutors' offer of an ACD with no immediate sealing, even under their threat that it was their "last" offer. (Shanies Decl., Ex. 10 (Crim. Ct. Trs.), at DEF887-88.)  The prosecutors responded to his rejection with a follow-up offer of an ACD *with* immediate sealing, even though such an ACD is not provided for under the statute, and the prosecutors were by no means obligated to make such an offer.  (*Id.* at DEF890.)  Following Plaintiff's acceptance of the ACD with immediate sealing, there was no conditional "period of observation" during which his behavior was monitored and during which he was required to demonstrate that the charges against him should not be pursued. (*See id.*)  In fact, "observation" was impossible because the sealing of the case rendered it and all documentation of it off-limits and unknowable.  See N.Y. Crim. Proc. L. § 160.50(1)(c) (providing that all records "shall be sealed and not made available to any person or public or private agency").  Moreover, there was no court date after the hearing at which Plaintiff's charges were terminated.  The dismissal of Plaintiff's charges pursuant to an ACD with

---

explicit or implicit admission of guilt."  *Id.* at 197 (collecting other states' statutes).  Moreover, viewing ACDs as unfavorable terminations "in effect indirectly creates a wholly unwarranted irrebuttable presumption of a criminal defendant's guilt," *id.* at 200, and runs counter to other provisions in the New York Criminal Procedure Law that contain language describing such dismissals as favorable terminations, *id.* at 197-99 (citing N.Y. Crim. Proc. Law §§ 160.50, 160.60).  The reality is that rather than granting a "special break for first offenders," as the majority in *Singleton* viewed ACDs, *id.* at 194 (majority), ACDs now simply provide prosecutors a means to avoid malicious prosecution suits brought by innocent individuals.  "No state or federal need justifies such a harsh result," as Judge Weinstein noted, where innocent individuals are deprived of the ability to pursue federal civil rights remedy and where prosecutors are able to protect police officers who acted in bad faith and violated the Constitution.  *Id.* at 201 (Weinstein, J., dissenting).

immediate sealing therefore constitutes a favorable termination for purposes of malicious prosecution.[2]

### 3. The Dismissal of Plaintiff's Charges in the Interest of Justice Was a Favorable Termination

The dismissal in the interest of justice of the assault charges against Plaintiff was similarly a favorable termination. A dismissal in the interest of justice may not be a favorable termination in the context of malicious prosecution where it "leaves the question of guilt or innocence unanswered." *Lanning*, 908 F.3d at 28-29 (quoting *Hygh v. Jacobs*, 961 F.2d 359, 367-68 (2d Cir. 1992)). It may be favorable, however, where the dismissal is based on proffered evidence supporting a claim of innocence. *See Chambers v. County of Nassau*, No. 19-cv-0158 (SJF) (AYS), 2020 U.S. Dist. LEXIS 14984, at *8 (E.D.N.Y. January 28, 2020), *report and recommendation adopted*, 2020 U.S. Dist. LEXIS 28377 (E.D.N.Y. Feb. 19, 2020).

Looking at the totality of the circumstances, the evidence here shows that the dismissal of the assault charges against Plaintiff was a decision by the prosecutors not to proceed on the merits because they viewed the evidence and determined it did not support the prosecution. *Murphy*, 118 F.3d at 949 ("[T]he failure to proceed to the merits compels an inference of such an unwillingness or inability to do so as to imply a lack of reasonable grounds for the prosecution." (citation omitted)). Police had obtained a video of the incident after the arrest and before the May 2, 2019 hearing at which the assault charges were dropped. (*See* Shanies Decl., Ex. 4 (T.R.I. Incident Report), at DEF082; Shanies Decl., Ex. 10 (Crim. Ct. Trs.),

---

2.  This Court previously found that it "is of no moment" whether a plaintiff's record is immediately sealed following his acceptance of an ACD. *See Coleman v. City of New York*, No. 11-cv-2394 (ENV) (RLM), 2013 U.S. Dist. LEXIS 206709, at *4 n.4 (E.D.N.Y. Oct. 24, 2013). In reaching that conclusion, the Court may not have had before it the same arguments made here. In any event, we ask the Court to reconsider that conclusion. First, *Coleman* was decided before *Lanning*, in which the Second Circuit made clear that a termination must be "measured in objective terms by examining the totality of the circumstances." *Lanning*, 908 F.3d at 28 (citation omitted). Second, the Court in *Coleman* did not appear to consider the fact that Section 160.50(1)(c) negates the "period of observation" that the Second Circuit found significant in *Singleton*.

at DEF817); *see also Chambers*, 2020 U.S. Dist. LEXIS 14984, at *7-8 (finding affirmative

indication of plaintiff's innocence where video of plaintiff's encounter with police was presented

to officers and officers lied about what they observed, but conceded that prosecution dismissed

charges against plaintiff in interest of justice after plaintiff "presented information which

contradicted the arresting officers' testimony").  No jurisdictional or technical ground was raised,

as in *Lanning*, *see* 908 F.3d at 28, no compromise was broached, and no act of mercy was

requested.  (*See* Shanies Decl., Ex. 10 (Crim. Ct. Trs.), at DEF817.)  Rather, it was the charges'

lack of merit that resulted in their dismissal.

Even assuming, *arguendo*, that there is any ambiguity in the prosecution's stated

reason for dismissing the assault charges, the question as to the nature and circumstances of the

termination is a *factual* one, therefore precluding summary judgment dismissal of Plaintiff's

malicious prosecution claim.  *See Murphy*, 118 F.3d at 950 ("In general, the issue of whether a

given type of termination was favorable to the accused is a matter of law for the court.  If,

however, there is a question as to the nature of the circumstances leading to that termination, that

question is one for the trier of fact." (citations omitted)); *see also Ricciuti v. N.Y.C. Transit Auth.*,

124 F.3d 123, 131 (2d Cir. 1997) ("When the termination of a case is indecisive because it does

not clearly address the merits of the charge, the underlying facts must be examined to determine

'whether the failure to proceed implies a lack of reasonable grounds for the prosecution.'"

(citation omitted)).

Defendants argue that the prosecution's expressed reason during the criminal

court appearance for dismissing the charges – "Interest of justice," (Shanies Decl., Ex. 10 (Crim.

Ct. Trs.), at DEF817:21-22) – is not indicative of Plaintiff's innocence.  (Mem. of Law in Supp.

of Defs. City of New York, Patrick Quigley, Craig Lupardo, and Daniel Delpino's Mot. for

Summ. J. ("Defs.' Mem.) at 13.)  Such a bare-bones statement, however, can easily be

interpreted as implying a lack of reasonable grounds for further prosecution.  As such, to the

extent that there is a question of whether the dismissal in the interest of justice went to the merits

of Plaintiff's criminal case, all reasonable inferences should be construed in Plaintiff's favor, and

summary judgment should be denied.  *See, e.g.*, *Ricciuti*, 124 F.3d at 131 (finding that district

court erred in granting defendants summary judgment on malicious prosecution claim, where

reasons for dismissal were in dispute and where jury could find in plaintiff's favor).

### B.   Video Evidence Establishes That Defendants Had No Probable Cause to Commence Plaintiff's Criminal Proceedings

Defendants argue that Plaintiff's malicious prosecution claim also fails because

there was probable cause, or at least arguable probable cause, to support the initiation of the

criminal proceedings against him.  In support of this argument, they point solely to a video

recording of the stairwell depicting part of the alleged "assault."  According to Defendants,

"[t]he video reveals that [P]laintiff engaged in intentional acts that interfered with his arrest and

caused Officer Delpino injury," (Defs.' Mem. at 13), because it shows Plaintiff "lung[ing] into

Officer Delpino, using his right shoulder to push into Officer Delpino's left shoulder, [and]

knocking Officer Delpino down the stairs onto the landing," (*id.* at 6).

First, Defendants arrested Mr. Adams not for the incident on the stairs but for the

false claim that he possessed marijuana.  Second, Defendants' frame-by-frame description of the

video, while long, is not accurate, and appears to be more an exercise in creative writing.  Rather

than showing Plaintiff "knocking" Defendant Delpino down the stairs, as Defendants insist, the

video plainly shows that Plaintiff was innocent of the charges levied against him.  It shows that

Defendant Delpino forcefully escorted Plaintiff down a flight of stairs and yanked Plaintiff,

causing Plaintiff to stumble and make contact with him.  As Defendant Delpino started falling

himself, he pulled Plaintiff with him such that they both fell down the remaining steps and onto

the landing separating the first flight of stairs from the second.  Plaintiff lay on the landing

unable to stand up.  Defendant Delpino, on the other hand, had no such difficulty.  He stood up

with no assistance and continued to lead the visibly injured Plaintiff down the stairs.  As shown

in the video, Plaintiff was bent over and hobbled with a limp as Defendant Delpino led him down

the second flight.  Even if a jury disagreed with Plaintiff as to whether Defendant Delpino pulled

him down the stairs, it is clear from the video at the very least, that Plaintiff did not "knock" the

officer down, that the two men instead slipped, and that Plaintiff was the only one who suffered

any visible injuries.

        The other officers' reactions further undermine Defendants' credibility and

confirm that Plaintiff in no way "lunged" into or assaulted Defendant Delpino.  Upon Plaintiff

and Defendant Delpino falling, the officer who had been walking in front of them glanced briefly

back at them for just *two seconds* before proceeding down the second flight of stairs,

unconcerned with what had happened.  Defendant Lupardo, who had been walking down the

stairs behind them, paused momentarily at the landing where they had fallen before seeing that

Defendant Delpino was not injured.  He then simply walked past them and also continued down

the second flight of stairs.  As such, Defendants' theory that Plaintiff assaulted an officer – while

restricted by handcuffs and sandwiched by two other officers – is belied by this video evidence

showing that *none* of the officers responded at the time as if there had been any alleged "assault."

*See Sanders v. City of New York*, No. 12-cv-113 (PKC)(LB), 2015 U.S. Dist. LEXIS 42698, at

*27, *49-55 (E.D.N.Y. Jan. 7, 2015), *report and recommendation adopted*, 2015 U.S. Dist.

LEXIS 40972 (E.D.N.Y. Mar. 30, 2015) (refusing to "credit defendant['s] . . . characterizations

of what he observed from the video" and concluding that video undermined that there was probable cause).

At a minimum, there is a material factual dispute regarding the circumstances that led to the fall and whether probable cause existed for the initiation of the criminal proceedings against Plaintiff. A number of reasonable inferences can – and should – be drawn in Plaintiff's favor, as is appropriate on a motion for summary judgment. *See Niagara*, 315 F.3d at 175; *see also Sanders*, 2015 U.S. Dist. LEXIS 42698, at *27 ("[E]ven when there is a video, courts must still draw reasonable inferences in the non-moving party's favor." (citation omitted)). A jury could infer, for example, that Defendant Delpino's tugging of Plaintiff (whether intentionally to make Plaintiff fall or simply to hurry him down the stairs) is what caused both men to tumble. Another reasonable inference is that neither Defendant Delpino nor any other officer at the scene thought Plaintiff had assaulted Defendant Delpino, given their calm demeanor following the fall.

Because of these reasonable inferences and this enduring factual dispute, summary judgment in Defendants' favor would be improper. *See Morris v. Martin*, No. 16-cv-601, 2019 U.S. Dist. LEXIS 183610, at *14-15 (N.D.N.Y. Oct. 23, 2019) (denying defendants' motion for summary judgment as to plaintiff's malicious prosecution claim, given that dash camera video did not "definitively identif[y]" whether object in question was narcotics); *Wharton v. County of Nassau*, No. 07-cv-2137, 2010 U.S. Dist. LEXIS 99174, *20-21 (E.D.N.Y. Sept. 20, 2010) (finding genuine issues of material fact precluding summary judgment, where plaintiff's "behavior and demeanor" was "vigorously disputed" and video did not conclusively demonstrate probable cause)

16

**C.      Evidence in the Record Demonstrates that Defendants Acted with Actual Malice**

Summary judgment in Defendants' favor is also unwarranted because Plaintiff satisfies the final element of malicious prosecution claims: demonstrating actual malice as a motivation for Defendants' actions.  "[M]alice does not have to be actual spite or hatred, but means only 'that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'"  *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (quoting *Nardelli v. Stamberg*, 44 N.Y.2d 500, 502-03 (1978)).  "[L]ack of probable cause generally raises an inference of malice sufficient to withstand summary judgment."  *Ricciuti*, 124 F.3d at 131 (citing *Lowth*, 82 F.3d at 573); *see also Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003) ("Once [a court] find[s] an issue of material fact as to probable cause, the element of malice also becomes an issue of material fact as well.").

Here, that Defendants acted with actual malice in prosecuting Plaintiff is supported by video evidence.  As discussed above, the stairwell video demonstrates that there was no probable cause to bring assault charges against Plaintiff.  Instead, Defendants manufactured a story about an alleged "assault" by Plaintiff to further the prosecution and protect themselves from a false arrest suit and – at the time – a feared excessive force suit.  Because "a jury could find that probable cause for the charges against [him] was lacking, . . . that finding alone would support an inference of malice."  *Ricciuti*, 124 F.3d at 131; *see also Wharton*, 2010 U.S. Dist. LEXIS 99174, at *20-21 (finding that "[t]he contested probable cause issue also inform[ed] the malice element, as malice can be inferred from the absence of probable cause").

Defendant Quigley's deposition testimony further confirms that Defendants were motivated by malice.  When asked why he went to the District Attorney's office with Defendant

Lupardo on the evening of Plaintiff's arrest, Defendant Quigley replied that "this was important because one of the officers . . . had been injured." (Shanies Decl., Ex. 11 (Quigley Dep. Tr.), at 192:10-193:15.) Notably, Defendant Quigley also testified that when officers under his command make arrests, he does *not* typically go with them to the District Attorney's office, and that accompanying Defendant Lupardo this time "was out of the ordinary." (*Id.* at 192:24-193:6.)

Finally, Defendants gloss over that the marijuana allegedly observed on Plaintiff was never recovered, even though marijuana recovered from another individual had been. No marijuana was recovered from Plaintiff because Plaintiff never possessed marijuana. The only excuse Defendants provide for their failure to retrieve this alleged marijuana is that Plaintiff "dropped" it, and Defendant Quigley was unable to "search more thoroughly" for it because a crowd that had formed "posed a safety risk and was threatening violence, and Sergeant Quigley could not bend over to look because he feared someone might kick him in the face." (Defs.' Mem. at 4.) This is another fanciful story contrived by Defendants to cover up the fact that there was no probable cause, and that the proceedings against Plaintiff were initiated due to improper motives.

In sum, the evidence in the record, as well as the reasonable inferences that can be drawn in Plaintiff's favor, are sufficient to create a question of material fact to overcome summary judgment.

## II.    Plaintiff Satisfies Any Favorable-Termination Requirement Imposed by McDonough to Allege a Claim for Fabrication of Evidence

A fair trial claim based on the fabrication of evidence requires a plaintiff to demonstrate that "an (1) investigating official (2) fabricate[d] information (3) that is likely to influence a jury's verdict, (4) forward[ed] that information to prosecutors, and (5) the plaintiff

suffer[ed] a deprivation of life, liberty, or property as a result." *Garnett v. Under Cover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016) (citations omitted).

Defendants do not dispute that Plaintiff here satisfies all of these elements.  They instead argue that following the Supreme Court's decision in *McDonough v. Smith*, 139 S. Ct. 2149 (2019), because Plaintiff's fabricated-evidence claim necessarily questions the validity of the criminal proceedings against him, Plaintiff must also meet the favorable-termination requirement of malicious prosecution.  (*See* Defs.' Mem. at 15-18.)  That is, according to Defendants, he must show affirmative indications of innocence.  Notwithstanding that Plaintiff meets malicious prosecution's favorable-termination requirement, as discussed *supra*, affirmative indications of innocence are *not* necessary for fabricated-evidence claims in this Circuit, and *McDonough* in no way disturbed this precedent.  Rather, insofar as *McDonough* imposed any favorable-termination requirement on fabricated-evidence claims, that requirement is only the one set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994), which Plaintiff satisfies.

## A. Affirmative Indications of Innocence Are Not Necessary for Fabricated-Evidence Claims

It is well established that malicious prosecution and fabricated-evidence claims are "separate causes of action," each "composed of distinct elements and therefore reflect[ing] distinct constitutional claims."  *Galgano v. County of Putnam*, No. 16-cv-3572 (KMK), 2020 U.S. Dist. LEXIS 116682, at *28-29 (S.D.N.Y. July 2, 2020) (citations omitted); *see also Simon v. City of New York*, No. 16-cv-1017 (NGG) (RML), 2020 U.S. Dist. LEXIS 47919, at *16 (E.D.N.Y. Mar. 19, 2020) (noting the "longstanding distinction between malicious prosecution claims and fair trial claims based on the fabrication of evidence").

Malicious prosecution claims, as noted above, arise under the Fourth Amendment's protection against unreasonable seizures. *Lanning*, 908 F.3d at 28.  "The essence

19

of [such a] claim is the alleged groundless prosecution, without which there would not be any

basis for the claim." *Singleton*, 632 F.2d at 195.  In other words, for a plaintiff to demonstrate

that he was subject to an unreasonable seizure, therefore giving rise to a malicious prosecution

claim, he must show that he was prosecuted without any reasonable basis.  "[A]bsent an

affirmative indication that the person is innocent of the offense charged, the government's failure

to proceed does not necessarily 'impl[y] a lack of reasonable grounds for the prosecution.'"

*Lanning*, 908 F.3d at 28 (second alteration in original) (quoting *Conway v. Village of Mount

Kisco*, 750 F.2d 205, 215 (2d Cir. 1984)).

   In contrast, fabricated-evidence claims are grounded in the protections of the

Fourteenth Amendment's Due Process Clause and its guarantee of a fair trial.  *Ricciuti*, 124 F.3d

at 130.  As the Second Circuit explained in *Ricciuti*, such claims arise out of the principle that

"[n]o arrest, no matter how lawful or objectively reasonable, gives an arresting officer or his

fellow officers license to deliberately manufacture false evidence against an arrestee."  *Id.*  To

find otherwise "would make a mockery of the notion that Americans enjoy the protection of due

process of the law and fundamental justice," because the fabrication of evidence "works an

unacceptable 'corruption of the truth-seeking function of the trial process.'" *Id.* (quoting *United

States v. Agurs*, 427 U.S. 97, 104 (1976)); *see also Giglio v. United States*, 405 U.S. 150, 153

(1972) ("[D]eliberate deception of a court and jurors by the presentation of known false evidence

is incompatible with 'rudimentary demands of justice.'").  Given that "the fabrication of

evidence is definitionally unreasonable," *Simon*, 2020 U.S. Dist. LEXIS 47919, at *17, and even

a guilty individual can be deprived of his constitutional right to a fair trial, *see Poventud v. City

of New York*, 750 F.3d 121, 133-34 (2d Cir. 2014) (en banc), fabricated-evidence claims do not

require affirmative indications of innocence.  *See Simon*, 2020 U.S. Dist. LEXIS 47919, at *15

("Assuming . . . that the dicta in *McDonough* introduced a favorable termination element into Plaintiff's fair trial claim, it does not follow that the strict 'affirmative indication of innocence' standard necessarily applies.").

Indeed, under longstanding Second Circuit authority, unlike malicious prosecution claims, fabricated-evidence claims can move forward despite probable cause. *Compare Lanning*, 908 F.3d at 24 (requiring malicious prosecution plaintiffs to show that "criminal proceedings were initiated or continued against [them], with malice and *without probable cause*" (emphasis added)), *with Garnett*, 838 F.3d at 277-78 ("[A] Section 1983 claim for the denial of a right to a fair trial based on an officer's provision of false information to prosecutors can stand *even if the officer had probable cause* to arrest the Section 1983 plaintiff." (emphasis added), *and Ricciuti*, 124 F.3d at 130 (holding that even where there is probable cause for an arrest, an officer who subsequently "creates false information likely to influence a jury's decision and forwards that information to prosecutors . . . violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983").

**B.**    ***McDonough v. Smith* Did Not Overrule Second Circuit Caselaw Defining the Nature and Elements of Fabricated-Evidence Claims**

Contrary to Defendants' suggestion otherwise, *McDonough* in no way disturbed this Second Circuit precedent treating fabricated-evidence and malicious prosecution claims as distinct and allowing the former to proceed even where there is probable cause of guilt.  In deciding *McDonough*, the Supreme Court expressly declined "to opine on what the elements of a constitutional malicious prosecution action under §1983 are or how they may or may not differ from those of a fabricated-evidence claim."  *McDonough*, 139 S. Ct. at 2156 n.3.  Referring to the Second Circuit's treatment of McDonough's fabrication claim as arising under the Due

Process Clause, the Supreme Court "assume[d] without deciding that the Second Circuit's articulations of the right at issue and its contours are sound." *Id.* at 2155. Moreover, the dissent centered precisely on the majority's decision not to take a position on either the specific constitutional basis or the elements of such claims. *See id.* at 2161-62 (Thomas, J., dissenting). As a result, rather than "alter the enduring distinction between malicious prosecution and fair trial claims," *McDonough* maintained that "the two claims arise out of different constitutional rights, protect against different constitutional injuries, and implicate different constitutional concerns." *See Simon*, 2020 U.S. Dist. LEXIS 47919, at *17.

Because the Second Circuit's articulation of the nature and elements of fabricated-evidence claims remains unchanged, this Court is bound by such precedent. *See United States v. Hightower*, 950 F.3d 33, 36 (2d Cir. 2020) (noting that a "decision of a panel of this Court is binding unless and until it is overruled by the Court *en banc* or by the Supreme Court" or "when an intervening Supreme Court decision . . . casts doubt on our controlling precedent" (citations omitted)).

To the extent that *McDonough* introduced any favorable-termination requirement into fabricated-evidence claims like Plaintiff's, the one that it imposed is *Heck*'s requirement, which is different than that of malicious prosecution. Defendants improperly conflate these two favorable-termination requirements, but as the Ninth Circuit and district courts within this Circuit have recognized, they are not the same. *See, e.g.*, *Roberts v. City of Fairbanks*, 947 F.3d 1191, 1201 (9th Cir. 2020) ("*Heck*'s favorable-termination requirement is distinct from the favorable-termination element of a malicious prosecution claim."); *Ross v. City of New York*, No. 17-cv-3505 (PKC) (SMG), 2019 U.S. Dist. LEXIS 169762, at *19 (E.D.N.Y. Sept. 30, 2019) ("[B]ecause fair trial jurisprudence, starting with *Heck* and continuing through *McDonough*, is

primarily concerned with the potential for invalidating criminal convictions, the favorable termination requirement for fair trial claims (assuming there is one) is necessarily different and more expansive than the one for malicious prosecution claims.").

Even a cursory examination of the two requirements and their motivations makes their differences clear. As discussed above, the malicious prosecution standard requires the plaintiff to show affirmative indications of innocence so as to demonstrate the unreasonableness of the prosecution. *Lanning*, 908 F.3d at 28. To satisfy *Heck*'s favorable-termination requirement, on the other hand, a plaintiff must simply prove that his conviction or sentence has been invalidated in some way, either by being "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87. This requirement stems from "concerns with avoiding parallel criminal and civil litigation over the same subject matter and the related possibility of conflicting civil and criminal judgments." *McDonough*, 139 S. Ct. at 2157 (citing *Heck*, 512 U.S. at 484-85). As such, it applies whenever "a judgment in favor of the plaintiff would necessarily imply" the invalidity of his criminal proceeding. *Id.* (citing *Heck*, 512 U.S. at 487).

In *McDonough*, the Supreme Court itself conceptualized different meanings of "favorable termination" and explicitly left open the question of what types of resolutions may be viewed as "favorable." Specifically, it noted that "[b]ecause McDonough's acquittal was unquestionably a favorable termination, we have no occasion to address the broader range of ways a criminal prosecution (as opposed to a conviction) might end favorably to the accused." *Id.* at 2160 n.10. It then suggested that considerations such as "prosecutors' broad discretion over such matters . . . might call for a *context-specific and more capacious understanding of*

*what constitutes 'favorable' termination for purposes of a §1983 false-evidence claim*." *Id.*

(emphasis added).  At bottom, what constitutes favorable termination in the evidence-fabrication

context is broader than what constitutes favorable termination for malicious prosecution claims.

In any event, the Supreme Court was clear in *McDonough* that the only favorable-

termination requirement it was recognizing with respect to fabrication claims is *Heck*'s.  In

determining the accrual of the statute of limitations for such claims, it held that "[o]nly once the

criminal proceeding has ended in the defendant's favor, or a resulting conviction has been

invalidated *within the meaning of Heck* will the statute of limitations begin to run."  *Id.* at 2158

(emphasis added) (citation omitted).  The Supreme Court was clear about which favorable-

termination requirement was at issue.  To be sure, the Supreme Court referred to malicious

prosecution's requirement repeatedly in its decision.  However, it did so merely to present an

analogy and expressly noted that "comparing constitutional and common-law torts is not a one-

to-one matching exercise." *Id.* at 2156 n.5.  Accordingly, Defendants' argument that *McDonough*

imposes malicious prosecution's favorable-termination requirement as a substantive element to a

fabrication claim like Plaintiff's is based on a flawed reading of the decision.

## C.    Acceptance of an ACD Is a Favorable Termination for Purposes of a Fabrication Claim

Consistent with *Heck*, *McDonough*, and enduring Second Circuit caselaw, ACDs

– whether with immediate sealing or not – are favorable terminations for fabrication claims.

Given that *Heck* requires only invalidation of the criminal proceeding, an ACD, as was received

by Plaintiff, is sufficient because it results in a complete dismissal of the charges.  Indeed, with

an ACD, the criminal proceeding is considered "invalid" by statute: the prosecution is "deemed a

nullity" upon dismissal.  *See* N.Y. Crim. Proc. Law § 170.55(8).  Plaintiff's acceptance of an

ACD therefore falls squarely within the "context-specific and more capacious understanding" of

24

a favorable termination for purposes of a fabricated-evidence claim, *McDonough*, 139 S. Ct. at

2160 n.10, as courts have recognized even in the aftermath of *McDonough*.  *See, e.g.*, *Ross*, 2019

U.S. Dist. LEXIS 169762 at *19-20 ("[B]ecause the *Heck* bar only considers 'whether a

judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or

sentence,' the Court finds, consistent the well-established rule in this Circuit, that an ACD does

not preclude Plaintiff's fair trial claim." (quoting *Heck*, 512 U.S. at 487)); *Colon v. City of

Rochester*, 419 F. Supp. 3d 586, 608 n.7 (W.D.N.Y. 2019) (following *Ross* and finding that ACD

does not bar fair-trial claim based on fabrication of evidence).

This Court ruled to the contrary in *Miller v. Terrillion*, 436 F. Supp. 3d 598

(E.D.N.Y. 2020).  There, this Court held that an ACD does *not* satisfy *McDonough*'s favorable-

termination requirement for fabrication claims, under the reasoning that a termination that does

not affirmatively indicate innocence accepts that there was probable cause, and accordingly,

validity to the proceedings.  *See id.* at 606.  Specifically, this Court found that following

*McDonough*, "criminal defendants may no longer aim their axes, by civil lawsuit, at the trunk of

ongoing criminal proceedings, *for such actions risk collaterally felling them*."  *Id.* at 606

(emphasis added).  By finding as such and, in effect, defining favorable termination for purposes

of fabrication claims as requiring lack of probable cause, *Miller* changed the substantive

elements of such claims.

As discussed above, however, *McDonough* expressly disavowed changing the

elements and did not upset Second Circuit caselaw holding that lack of probable cause is not

required for § 1983 fabrication claims.  Following *McDonough*, numerous other courts in this

Circuit have accordingly continued to find that fair-trial claims can proceed even with the

existence of probable cause for the arrest.  *See, e.g.*, *Mortimer v. Wilson*, No. 15-cv-7186 (KPF),

2020 U.S. Dist. LEXIS 118908, at *38 n.11 (S.D.N.Y. July 7, 2020) ("[T]hough probable cause is a complete defense to a claim for malicious prosecution, the same is not true for a fair trial claim." (citing *Ganek v. Leibowitz*, 874 F.3d 73, 91 (2d Cir. 2017)); *Hincapie v. City of New York*, 434 F. Supp. 3d 61, 75 (S.D.N.Y. 2020) ("A fair trial claim based on fabricated evidence can be sustained even if the officer had probable cause to arrest in the first place." (citing *Garnett*, 838 F.3d at 277-78)); *Nelson v. County of Suffolk*, No. 12-cv-5678 (DRH)(AKT), 2019 U.S. Dist. LEXIS 143094, at *29-30 (E.D.N.Y. Aug. 22, 2019) ("[A] claim asserting the denial of a right to a fair trial 'finds it roots in the Sixth Amendment, as well as the due process clauses of the Fifth and Fourteenth Amendments, which secure the fundamental right to a fair trial in criminal proceedings.' The existence of probable cause is irrelevant to such a claim." (citations omitted)).

In any event, this case is distinguishable from *Miller*. Unlike in *Miller*, Plaintiff's fabrication claim does not inherently attack the "sole basis" of the validity of the criminal proceeding. *See* 436 F. Supp. 3d at 606. Plaintiff was falsely accused of, *inter alia*, assaulting an officer and possessing marijuana. A jury in this case could conclude that officers fabricated some, but not all, of the evidence against Plaintiff. If a jury believed the officers that Mr. Adams *did* have marijuana (he did not), then the fabrication of evidence would harm the criminal proceedings independent of their validity, as the Court alluded to in *Miller*.

### D.    A Dismissal in the Interest of Justice Is a Favorable Termination for Purposes of a Fabrication Claim

The dismissal in the interest of justice of Plaintiff's assault charges similarly do not bar him from bringing a § 1983 claim for fabrication of evidence. "[T]he risk that a judgment for . . . [P]laintiff on his civil claim would conflict with or impugn the validity of the earlier criminal proceeding against him . . . is nonexistent." *Simon*, 2020 U.S. Dist. LEXIS

47919 at *17.  That is because the dismissal in the interest of justice definitively brought

Plaintiff's criminal case to a conclusion and avoids the possibility of conflicting judgments.

Therefore, such disposition of the assault charges against Plaintiff is a favorable termination for

purposes of his § 1983 fabrication claim.  *See id*. at *17-18 (concluding that dismissal in interest

of justice satisfies any favorable-termination requirement imposed by *McDonough*).

## III.   Defendants Falsely Arrested Plaintiff for Assault, Resisting Arrest, and Obstructing Governmental Administration[3]

### A.   Defendants Had No Probable Cause to Arrest Plaintiff for Assault, Resisting Arrest, and Obstructing Governmental Administration

As with Plaintiff's malicious prosecution and fabrication claims, Defendants'

challenges to Plaintiff's false arrest claim are without any merit.  To establish a § 1983 claim for

false arrest, "a plaintiff must show that 'the defendant intentionally confined him without his

consent and without justification.'"  *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (quoting

*Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)).  Although "[t]he existence of probable cause

is an absolute defense to a false arrest claim," *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006),

probable cause exists only "when the officers have knowledge or reasonably trustworthy

information of facts and circumstances that are sufficient to warrant a person of reasonable

caution in the belief that the person to be arrested has committed or is committing a crime,"

*Dufort v. City of New York*, 874 F.3d 338, 348 (2d Cir. 2017) (quoting *Weyant*, 101 F.3d at 852).

Probable cause "requires more than a 'mere suspicion[]' of wrongdoing."  *Walczyk v. Rio*, 496

F.3d 139, 156 (2d Cir. 2007) (quoting *Mallory v. United States*, 354 U.S. 449, 455, (1957)).  If

---

3.   Defendants do not seek to move to dismiss Plaintiff's false arrest claim arising out of the marijuana charges, but seek to limit the extent of the damages based upon the arrest.  Defendants did not mention that they would seek to move on the false arrest claim (or the *Monell* claims) in their pre-motion letter to the Court, which itself is grounds for denial on both aspects of the motion.  *See Xiao Dong Fu v. Red Rose Nail Salon Inc.*, No. 15-cv-7465, 2017 U.S. Dist. LEXIS 35312, at *2 (S.D.N.Y. Mar. 13, 2017) (flouting local and individual rules of the court is grounds to deny a summary judgment motion).

the issue of probable cause is "predominantly factual in nature," then it is "properly presented to

the jury." *Moore v. Comesanas*, 32 F.3d 670, 673 (2d Cir. 1994); *see also Dufort*, 874 F.3d at

348 ("Questions of historical fact regarding the officers' knowledge at the time of arrest are to be

resolved by the jury." (citation omitted))

   Probable cause for the initial arrest must exist for there to be a basis to charge an

individual with assault in the second degree, resisting arrest, or obstructing governmental

administration ("OGA").  "An essential element of assault in the second degree is that a

defendant's acts were committed with intent to prevent an officer from 'performing a lawful

duty' . . .  i.e. that [the police] had probable cause when they arrested defendant[.]"  *People v.*

*Rivera*, 46 A.D.3d 349, 350 (1st Dep't 2007) (citations omitted).  Similarly, "[i]t is well

established in New York that 'probable cause to arrest is a prerequisite for making an authorized

arrest,' and if there is no probable cause to arrest a person, that person 'cannot be guilty of

resisting arrest.'"  *Curry v. City of Syracuse*, 316 F.3d 324, 336 (2d Cir. 2003) (citation omitted);

*see also People v. Stevenson*, 31 N.Y.2d 108, 111 (1972) (recognizing that "the crime of resisting

arrest does not occur if the arrest is illegal or unlawful").  Finally, an individual is not guilty of

OGA unless the public servant, like an officer, is performing "an official conduct," which does

not include arrests that are unlawful.  *See Cameron v. City of New York*, 598 F.3d 50, 68 (2d Cir.

2010).

   Here, because there was no probable cause for the initial arrest of Plaintiff for

possession of marijuana, there was, in turn, no probable cause for his arrest for assault in the

second degree, resisting arrest, or OGA.  Defendant Quigley contends that he "observed

[P]laintiff holding something in his hand that appeared to be a marijuana cigarette, which

[P]laintiff dropped to the floor."  (Defs.' Mem. at 3.)  As noted above, however, Plaintiff did not

28

possess marijuana and the supposed marijuana cigarette inexplicably disappeared.  That marijuana was recovered from another individual has no bearing on whether there was probable cause to believe *Plaintiff* had marijuana, given that a finding of probable cause "must be justified by a 'belief of guilt' that is 'particularized with respect to the person to be searched or seized.'" *Dufort*, 874 F.3d at 348 (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)).  Accordingly, because there was no probable cause for Plaintiff's initial arrest, he cannot be guilty of assault in the second degree, resisting arrest, or OGA.

The video evidence also demonstrates that there was no probable cause for arresting Plaintiff for assault (either in the second or third degree), resisting arrest, or OGA – or, at least, disputed issues of fact in that regard.  All of these offenses require intent or recklessness on Plaintiff's part, either to injure, harass, or otherwise impede Defendant Delpino.  *See* N.Y. Pen. Law §§ 120.00(1), 120.00(2), 120.05(3), 195.05, 205.30.  Rather than showing Plaintiff intentionally lunging at Defendant Delpino, as Defendants insist, the video shows that *Defendant Delpino* was the one who intentionally – or, at the very least, accidentally – pulled Plaintiff down the stairs.  *See Landers v. City of New York*, No. 16-cv-5176 (PKC) (CLP), 2019 U.S. Dist. LEXIS 49352, at *21-22 (E.D.N.Y. Mar. 22, 2019) (denying defendants' motion for summary judgment on plaintiff's false arrest claim, where, based on video evidence, "reasonable jury could credit Plaintiff's statement" and conclude that defendants lacked probable cause to arrest him for OGA); *Wharton*, 2010 U.S. Dist. LEXIS 99174, at *18 (denying defendants' motion for summary judgment on plaintiffs' false arrest claim, where video footage was "inconclusive" and record therefore "contain[ed] disputed issues of fact as to whether [plaintiff] resisted arrest").

**B.** **Defendants Are Not Entitled to Qualified Immunity Because There Was No Arguable Probable Cause**

Defendants' argument that they are entitled to qualified immunity because they had probable cause to arrest Plaintiff is unavailing.  Police officers are entitled to qualified immunity for acts undertaken in their official capacities if "(1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." *Martinez v. Simonetti*, 202 F.3d 625, 633-34 (2d Cir. 2000) (citation omitted).  Where probable cause to arrest does not exist, an arresting officer is entitled to qualified immunity "if he can establish that there was 'arguable probable cause' to arrest." *Ackerson v. City of White Plains*, 702 F.3d 15, 21 (2d Cir. 2012) (citation omitted). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* (citation omitted).  "The test is not toothless, however: 'If officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause, the fact that it came close does not immunize the officer.'" *Id.* (citation omitted).

No reasonable officer in Defendants' position would have believed it was lawful to arrest Plaintiff either initially for possession of marijuana or subsequently for assault, resisting arrest, and OGA.  Plaintiff has testified consistently that he had no marijuana, and there is no physical evidence indicating otherwise.  *See Curry*, 316 F.3d at 336 (concluding that defendant officer did not establish he is entitled to qualified immunity because jury could find, if it believed plaintiff's testimony that he never had controlled substances on him, that no reasonable officer in defendant's position would have believed it was lawful to arrest Plaintiff for possession).  The stairwell video makes clear that based on their reactions to the fall, neither Defendant Delpino

nor any other officer at the scene thought Plaintiff had intentionally knocked Defendant Delpino

down the stairs, either to injure the officer or to interfere with the arrest.  Nor would any

reasonable officer believe as such, especially considering that in the narrow stairwell, there was

another officer directly in front of Plaintiff and a third officer directly behind him and therefore

little room for Plaintiff to resist arrest and flee.  As such, not only was there no probable cause

for Plaintiff's arrest, there was also no arguable probable cause.

## IV.     Plaintiff Sufficiently Alleges a Claim for Municipal Liability

Defendants' request for dismissal of Plaintiff's municipal liability claim is

inappropriate at this stage, where Defendants have never before alleged any deficiency in his

pleadings regarding this claim, and Defendants requested and obtained bifurcation of *Monell*

discovery.  Defendants never moved to dismiss Plaintiff's complaint under Federal Rule of Civil

Procedure 12(b).  Defendants did not raise in their pre-motion letter the sufficiency of Plaintiff's

pleadings or mention his *Monell* claim in seeking to move for summary judgment.[4]  Accordingly,

Plaintiff never sought to amend his complaint under Federal Rule of Civil Procedure 15(a)(1),

which allows a party to amend his pleadings "as a matter of course" after service of a motion to

dismiss, Fed. R. Civ. P. 15(a)(1)(B), or under Federal Rule of Civil Procedure 15(a)(2), which

allows a party to amend his pleadings with the court's leave, Fed. R. Civ. P. 15(a)(2).  Now, after

declining to move against Plaintiff's municipal liability claim for failure to state a claim upon

which relief can be granted, Defendants are trying to do so under the guise of a motion for

summary judgment, without giving Plaintiff an opportunity to conduct discovery or even amplify

his pleading.  *See Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000)

---

4.   Nor did Defendants indicate they would move against Plaintiff on the false arrest claim.  The Court's Individual
    Motion Practice and Rules require the party seeking to file a dispositive motion to file a letter "setting forth the
    factual and legal basis for the anticipated motion."  *Id.* Section III(A).

("[S]ummary judgment should only be granted 'if *after discovery*, the nonmoving party "has

failed to make a sufficient showing on an essential element of [its] case with respect to which [it]

has the burden of proof.'" (second and third alterations in original) (citation omitted)); *Kalin v.*

*Xanboo, Inc.*, 526 F. Supp. 2d 392, 399 (S.D.N.Y. 2007) (observing that "[s]ummary judgment

normally is inappropriate before parties have had an opportunity for discovery" and therefore

refusing to convert motion to dismiss into motion for summary judgment where discovery had

specifically been stayed).

Putting aside the impropriety of Defendants' argument, Plaintiff adequately

alleges a claim for municipal liability. To make out a claim for municipal liability under § 1983,

"a plaintiff must show that he suffered the denial of a constitutional right that was caused by an

official municipal policy or custom." *Bellamy v. City of New York*, 914 F.3d 727, 756 (2d Cir.

2019) (citation omitted); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

Here, Plaintiff's complaint sufficiently alleges a widespread and well-documented custom and

policy by the City of failing to discipline police officers who provide false statements and

testimony, as well as failing to train and supervise officers about their obligations to provide

truthful testimony and disclose evidence that favors criminal defendants. (*See* Compl. ¶¶ 69-89.)

In support of these allegations, the complaint points to, *inter alia*, the numerous civil lawsuits

that have been filed alleging perjury, evidence fabrication, and other misconduct by the police;

judicial decisions criticizing the New York Police Department (the "NYPD") and City for their

failure to properly train and discipline officers for such misconduct; reports and panel findings

documenting these failures; and news articles about the NYPD's practice of "testilying." (*See,*

*e.g., id.* ¶¶ 73-82.)

The Second Circuit and numerous courts within the Circuit have found that allegations about a municipality's failure to discipline police officers and other subordinates are sufficient to state a *Monell* claim – allegations similar to those made here.  *See, e.g.*, *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("[M]unicipal inaction such as the persistent failure to discipline subordinates who violate civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of *Monell*." (citations omitted)); *Collins v. City of New York*, 923 F. Supp. 2d 462, 477-78 (E.D.N.Y. 2013) (finding as facially plausible claim that district attorney's failure to discipline subordinates who engaged in prosecutorial misconduct amounted to a custom or policy was facially plausible); *Guzman v. City of New York*, No. 08-cv-2853 (FB) (VVP), 2010 U.S. Dist. LEXIS 108410, at *10 (E.D.N.Y. Oct. 13, 2010) (holding that allegation that City was deliberately indifferent to false arrests made by police officers was sufficient to plead that plaintiff "was injured because of the City's failure to supervise and/or discipline its employees").

Given the well-pleaded allegations in Plaintiff's complaint and cases finding similar allegations to adequately state a *Monell* claim, dismissal of Plaintiff's claim for municipal liability is unwarranted.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion for summary judgment in its entirety, and this case should proceed to trial.


DAVID B. SHANIES LAW OFFICE


New York, New York
Dated:  August 7, 2020

By:
David B. Shanies
Joel A. Wertheimer
Deborah I. Francois
411 Lafayette Street, Sixth Floor
New York, New York 10003
(212) 951-1710 (Tel)
(212) 951-1350 (Fax)
*david@shanieslaw.com*
*joel@shanieslaw.com*
*deborah@shanieslaw.com*

*Counsel for Plaintiff Andre Adams*