UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ANDRE ADAMS,

               Plaintiff,

    -against-

PATRICK QUIGLEY, CRAIG
LUPARDO, and DANIEL DELPINO,

             Defendants.

Case No. 19-CV-1662 (MKB) (RER)

**PLAINTIFF'S MEMORANDUM IN
OPPOSITION TO DEFENDANTS'
POST-TRIAL MOTIONS**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

LEGAL ARGUMENT ......................................................................................................... 2

I.    DEFENDANT LUPARDO'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW SHOULD BE DENIED. ...................................................... 2

II.   DEFENDANTS' MOTION FOR A NEW TRIAL RELIES ON PURE SPECULATION, IS UNSUPPORTED BY THE TRIAL RECORD, AND SHOULD BE DENIED. ............................................................................................ 6

    A.    Defendants Disregard that the Jury was Specifically Instructed Not to Consider the Source of Punitive Damages Funds. ...................................... 7

    B.    Defendant's Purported Comparison of the "Average" Salary of a Sergeant or Officer to the Verdict is Irrelevant and Misleading. .............. 10

III.  THE PUNITIVE DAMAGES AWARDED AGAINST EACH DEFENDANT ARE REASONABLE ................................................................ 11

    A.    Defendants' Conduct Was Reprehensible and Thus Deserving of Significant Punitive Damages. ................................................................. 12

        i.    Defendants' Actions Threatened Violence. ................................... 13

        ii.   The Jury Found that All Three Defendants Acted with Malice and Deceit. ................................................................................... 14

    B.    The Compensatory-to-Punitive Damages Ratios Are Well Within Constitutional Limits. ............................................................................... 17

    C.    Punitive Damages in Comparable Cases Confirm that the Jury's Award is Reasonable .................................................................................. 19

CONCLUSION ................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ayazi v. N.Y. City Bd. of Educ.*,
2013 U.S. Dist. LEXIS 202997 (E.D.N.Y., Feb. 1, 2013) ........................................................3

*Beautiful Home Textiles (USA), Inc. v. Burlington Coat Factory Warehouse Corp.*,
2015 WL 2330066 (S.D.N.Y. May 14, 2015) ...........................................................................8

*Bellamy v. City of New York*,
914 F.3d 727 (2d Cir. 2019) ....................................................................................................3

*BMW of N. Am., Inc. v. Gore*,
517 U.S. 559 (1996) ...........................................................................12, 13, 17, 18, 19

*Ciraolo v. City of New York*,
216 F.3d 236 (2d Cir. 2000) (Calabresi, J., concurring) ........................................................12

*Cronin v. St. Lawrence*,
2012 U.S. Dist. LEXIS 15743 (S.D.N.Y., Jan. 13, 2012) ....................................................2, 3

*Farrior v. Waterford Bd. of Educ.*,
277 F.3d 633 (2d Cir. 2002) ....................................................................................................7

*Garnett v. Undercover Officer C0039*,
838 F.3d 265 (2d Cir. 2016) ................................................................................................3, 6

*Haskins v. Jackson*,
No. 15-CV-2016 (MKB), 2020 WL 6705640 (E.D.N.Y. Nov. 10, 2020) (Brodie, J.) ..............................................................................................................3, 7, 20

*Hernandez v. Hodges*,
2023 WL 5336856 (N.D. Cal. Aug. 17, 2023) ......................................................................8, 9

*Hughes v. Patrolmen's Benev. Ass'n of City of N.Y., Inc.*,
850 F.2d 876 (2d Cir. 1988) ..................................................................................................19

*Jeffries v. Harleston*,
828 F. Supp. 1066 (S.D.N.Y. 1993) ........................................................................................10

*Jennings v. Yurkiw*,
18 F.4th 383 (2d Cir. 2021) ............................................................................. *passim*

*Jennings v. Yurkiw*,
2018 WL 5630454 (E.D.N.Y. Oct. 31, 2018), *aff'd*, 18 F.4th 383 (2d Cir. 2021) ..................................................................................................... *passim*

*Jones v. Town of E. Haven*,
691 F.3d 72 (2d Cir. 2012) ............................................................................. 2

*Kee v. City of New York*,
12 F.4th 150 (2d Cir. 2021) ........................................................................... 3

*Lee v. Edwards*,
101 F.3d 805 (2d Cir. 1996) ..................................................................... 13, 20

*Magalios v. Peralta*,
2022 WL 407403 (S.D.N.Y. Feb. 10, 2022), *aff'd*, 2023 WL 4618349 (2d Cir. 2023) ......................................................................................................... 18

*Manganiello v. Agostini*,
No. 07 CIV.3644 HB, 2008 WL 5159776 (S.D.N.Y. Dec. 9, 2008), *aff'd sub nom. Manganiello v. City of New York*, 612 F.3d 149 (2d Cir. 2010) ................... 20

*McClarin v. City of New York*,
No. 16-CV-6846-FB-SJB, 2023 WL 5831059 (E.D.N.Y. Sept. 8, 2023) ........... 19

*Morse v. Fusto*,
804 F.3d 538 (2d Cir. 2015) .......................................................................... 5

*Morse v. Fusto*,
No. 07-CV-4793 CBA RML, 2013 WL 4647603 (E.D.N.Y. Aug. 29, 2013), *aff'd*, 804 F.3d 538 (2d Cir. 2015) ................................................................ 20

*Nelson v. County of Suffolk*,
No. 12CV5678DRHAKT, 2019 WL 3976526 (E.D.N.Y. Aug. 22, 2019) ........... 20

*Provost v. City of Newburgh*,
262 F.3d 146 (2d Cir. 2001) ........................................................................ 10

*Raedle v. Credit Agricole Indosuez*,
670 F.3d 411 (2d Cir. 2012) .......................................................................... 7

*Rangolan v. Cnty. of Nassau*,
370 F.3d 239 (2d Cir. 2004) ........................................................................ 12

*Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133 (2000) ...................................................................................... 2

*Restivo v. Hessemann*,
846 F.3d 547 (2d Cir. 2017) ........................................................................ 20

iii

*Robertson v. Sullivan*,
    No. 07-CV-1416, 2010 WL 1930658 (E.D.N.Y. May 12, 2010) ...........................................20

*Saleh v. Pretty Girl, Inc.*,
    2022 WL 4078150 (E.D.N.Y. Sept. 6, 2022) .........................................................................18

*Sharkey v. J.P. Morgan Chase & Co.*,
    2018 WL 1229831 (S.D.N.Y. Mar. 5, 2018) ............................................................................9

*Soomro v. City of New York*,
    739 F. App'x 51 (2d Cir. 2018) ...............................................................................................3

*Stampf v. Long Island R. Co.*,
    761 F.3d 192 (2d Cir. 2014)....................................................................................................20

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003).........................................................................12, 13, 17, 18, 19, 20

*Theodat v. City of New York*,
    No. 16-CV-3977, 2019 WL 4385794 (E.D.N.Y Sept. 13, 2019), *aff'd*, 818 F.
    App'x 79 (2d Cir. 2020).........................................................................................................16

*Torres v. City of N.Y.*,
    No. 20-cv-4007 (BMC), 2022 U.S. Dist. LEXIS 58572 (E.D.N.Y. Mar. 30,
    2022) .........................................................................................................................................5

*Zellner v. Summerlin*,
    494 F.3d 344 (2d Cir. 2007)....................................................................................................2

**Other Authorities**

Fed. R. Civ. P. 15......................................................................................................................6

Fed. R. Civ. P. 50......................................................................................................................2

Fed. R. Civ. P. 59(a)(1)(A) ......................................................................................................9

Motion for Summary Judgment Opinion (ECF No. 70)............................................................6

## **INTRODUCTION**

Having failed to overcome the plentiful evidence of their own misconduct, Defendants Patrick Quigley, Daniel Delpino, and Craig Lupardo now move for a new trial, at least on damages, and for remittitur.  Defendant Lupardo also renews his motion for judgment as a matter of law with respect to the denial-of-a-fair-trial claim.  Because Defendants' arguments fall far short of the applicable standards for each motion, all of their motions should be denied.

On March 22, 2018, during a ground-up sweep of a public housing building, Defendant Quigley, using fabricated evidence, arrested Andre Adams without probable cause for unlawful possession of marijuana.  Following the arrest, Mr. Adams, who had his hands cuffed behind his back, fell down a flight of concrete stairs, causing himself and Defendant Delpino to tumble. Although none of the Officers at the scene had reason to believe, even mistakenly, that Mr. Adams "lunged" or "pushed" Officer Delpino down the staircase, all three aligned their stories to levy a charge against Mr. Adams for assaulting an officer.  While Officer Delpino went to the hospital shortly after the fall, Mr. Adams, who repeatedly begged for help, was held at the precinct and denied medical care by Sergeant Quigley.  Not until after a shift-change at the precinct would an officer allow Mr. Adams medical care.

After spending nearly 52 hours in confinement and making multiple court appearances to fight his wrongful charges, all claims against Mr. Adams were dismissed.  Mr. Adams thereafter took two claims, for false arrest and denial of a fair trial, to trial against all three Defendants.  After a four-day trial, the jury not only returned a favorable verdict for Mr. Adams on both claims, but specifically found that the charges against Mr. Adams—which, if successful, could have landed Mr. Adams in prison for over a decade—were based on Defendants' fabricated evidence.  Based on that finding, the jury awarded Mr. Adams $125,000 in compensatory damages, $500,000 in punitive damages against Defendant Quigley; $250,000 in punitive damages against Defendant

Delpino; and $250,000 in punitive damages against Defendant Lupardo.

For the reasons set forth below, the jury's verdict is sound and amply supported by the trial record, and the damages awards are not excessive. The Court should deny Defendants' motions.

## LEGAL ARGUMENT

### I.    DEFENDANT LUPARDO'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW SHOULD BE DENIED.

Defendant Lupardo asks this Court to disregard the high standard required to issue judgment as a matter of law on Plaintiff's fabrication-of-evidence fair trial claim. To grant a Rule 50 motion, there must be "a complete absence of evidence supporting the verdict" and the "court must consider the evidence in the light most favorable to the non-movant"—here, Mr. Adams— "and give that party the benefit of all reasonable inferences that the jury might have drawn in his favor from the evidence." *Cronin v. St. Lawrence*, 2012 WL 234384, at *4 (S.D.N.Y. Jan. 13, 2012); *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (internal quotation marks omitted). "In ruling on such a motion, the court must bear in mind that the jury is free to believe part and disbelieve part of any witness's testimony" and, thus, must "disregard all evidence favorable to the moving party that the jury is not required to believe." *Zellner v. Summerlin*, 494 F.3d 344, 371 (2d Cir. 2007) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 135 (2000)). Where, as here, there is legally sufficient evidentiary basis for a reasonable jury to find that Defendant Lupardo fabricated evidence against Plaintiff, judgment as a matter of law should be denied. Fed. R. Civ. P. 50.

Defendant Lupardo attempts to minimize this stringent standard, asserting that "a court should not hesitate to grant defendant judgment as a matter of law" when a jury's liability finding is unsupported by evidence. (Mot. at 4). But, far from suggesting that a judge "should not hesitate," even the case Lupardo cites for that proposition cautions that Rule 50 movants must

2

meet "a *heavy* burden . . . especially when the jury has deliberated in the case and actually returned a verdict in favor of the non-movant." *Cronin*, 2012 WL 234384, at *11–12 (emphasis added). Indeed, the *Cronin* court set aside its verdict only after emphasizing that successful Rule 50 applications require "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it." *Id*. This Court has previously held defendants to this high standard when denying Rule 50 motions. *See, e.g.*, *Haskins v. Jackson*, No. 15-CV-2016 (MKB), 2020 WL 6705640 at *13–14 (E.D.N.Y., Nov. 10, 2020); *Ayazi v. NYC Bd. of Educ.*, No. 98-CV-7461 (MKB), 2013 U.S. Dist. LEXIS 202997, *4–6 (E.D.N.Y., Feb. 1, 2013).

The record in this case makes plain that Defendant Lupardo's Rule 50 motion is baseless. An officer denies a plaintiff the right to a fair trial by fabricating evidence when: (1) the officer creates false information; (2) the officer forwards the false information to prosecutors; (3) the false information was likely to influence a jury's decision; and (4) the plaintiff suffered a deprivation of life, liberty, or property as a result of the officer's actions. *Kee v. City of New York*, 12 F.4th 150, 168 (2d Cir. 2021); *see also Soomro v. City of New York*, 739 F. App'x 51, 54 (2d Cir. 2018); *see also Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279–80 (2d Cir. 2016); *see also Bellamy v. City of New York*, 914 F.3d 727, 745 (2d Cir. 2019). The jury's verdict here was not the result of "sheer surmise and conjecture" as it was in *Cronin*; the trial record in this case contains substantial evidence to support each of the above elements as to Officer Lupardo.

*First*, in considering the evidence, the jury made credibility determinations and reasonable inferences, concluding that the officers were lying about the alleged assault, and that Officer Lupardo knew Mr. Adams did not intentionally cause Officer Delpino to fall down the stairs.

Although Officer Lupardo knew the allegation to be false, he repeated the statement from Officer Delpino, allowing that statement to be given to the prosecutor and included in the complaint against Plaintiff.  The jury's determination that Defendant Lupardo created false information when he swore out a statement that Mr. Adams "intentionally lunged his body down the stairs causing [Defendant Delpino] to fall down the stairs, and experience physical injury" (Declaration of Inna Shapovalova ("Shapovalova Decl."), Ex. C (Pl.'s Ex. 2)) was well-supported by the evidence:

- Though Officer Lupardo argues that he learned the information quoted above from Officer Delpino, it was reasonable for the jury to find that it was information Officer Lupardo knew to be false as he had in fact witnessed the fall[1], and yet affirmatively put the information forward as truthful in the complaint filed against Mr. Adams on March 22, 2018.

  - The jury specifically found Defendant Lupardo did not reasonably believe, even if mistaken, that Plaintiff pushed or lunged at Officer Delpino in the stairway on March 22, 2018.  (Declaration of Angela A. Smedley ("Smedley Decl.") Ex. K (ECF. No. 116-1, Special Verdict Form, Question 5).; *see Zellner*, 494 F.3d at 371 (jury entitled to disbelieve any witness)).

- Officer Lupardo testified that the criminal complaint he swore out to the prosecutor "includes [his] recollections as well."  (Smedley Decl. Ex. L (Trial Tr. at 463:14–19)).  As such, he cannot deny personal involvement even if he attributed certain factual statements to other officers.

- Officer Lupardo had conversations with the prosecutor about what happened and that informed the content of the complaint, again confirming his personal impressions were captured in the statement.  (*Id.* (Trial Tr. at 460:13–15)).

- The jury viewed the video[2] of Mr. Adams and Officer Delpino falling down the stairs numerous times during trial and in deliberations, a video depicting an accidental fall rather than a lunge.

---

[1] Officer Lupardo testified that he stood at the top of the stairs right behind Mr. Adams and Officer Delpino, that he saw Mr. Adams go down the stairs with Officer Delpino, and that he saw them fall down the stairs.  (Smedley Decl. Ex. L (Trial Tr. at 440:2–14)).  Officer Lupardo also submitted a sworn statement that he witnessed Officer Delpino become injured.  (Decl. Ex. M (Pl.'s Ex. 13).
[2] (Shapovalova Decl. Ex. C (Pl.'s Ex. 1).

- The jury heard Officer Lupardo contradict himself about his observations of the fall. The Jury saw Defendant Lupardo's signature on a sworn statement to prosecutors indicating Mr. Adams "lunged his body down the stairs." (Smedley Decl. Ex. K (Pl.'s Ex. 2)). On direct examination, Defendant Lupardo testified though that he observed Mr. Adams "shoulder Danny [Delpino] down the stairs," (Smedley Decl. Ex. L (Trial Tr. at 440:19–20)) but then on cross-examination, he testified "Andre Adams sort of [took] a step back" "and then a nudge forward with the shoulder." (*Id.* Trial Tr. at 482:22–25). Officer Lupardo never wrote down in his memo book or his witness statement that he saw Mr. Adams take a step back or nudge with his shoulder. (*Id.* Trial Tr. 441:9–17; 446:14-17). He tried to make sense of these contradictions, claiming a "lunge and a nudge are sort of equivalent." (*Id.* Trial Tr. at 446:20–21).

Even without more, the above evidence makes clear that the jury reasonably reached a well-founded determination that Officer Lupardo was involved in affirmative fabrications about Mr. Adams's conduct.

*Second*, the evidence supports an independent basis for the jury's determination that Officer Lupardo fabricated evidence against Mr. Adams. The deliberate omission of material information—such as knowledge that your colleague is lying about the underlying incident when you repeat his lies in a criminal complaint—is treated "the same way" as the fabrication of material information. *See Torres v. City of N.Y.*, No. 20-cv-4007 (BMC), 2022 U.S. Dist. LEXIS 58572, at *25 (E.D.N.Y. Mar. 30, 2022) (citing *Morse v. Fusto*, 804 F.3d 538, 548 (2d Cir. 2015)). Indeed, courts "make no legal distinction between misleading statements or omissions and affirmative falsehoods." *Morse*, 804 F.3d at 549 (citation omitted). Officer Lupardo's conversations and discussions with the prosecutor—in which he put forward an account he knew firsthand to be false *and* failed to take action, at any point, to correct the record—are sufficient to constitute evidence for the purpose of a fabrication claim. *Torres*, 2022 U.S. Dist. LEXIS 58572, at *27 (denying summary judgment where there was a "question of material fact as to whether [defendant] knew of and omitted the recantation in her discussions with the [assistant district attorney]").

Defendant Lupardo's claim that this omission argument was "sprung" upon him is both

false and irrelevant. As Plaintiff indicated in arguing his motions *in limine*, he would seek to "conform the pleadings to the evidence" at trial before the jury was charged if that evidence revealed facts supporting an unpled theory of liability. (*See* ECF No. 81 at. 4–5, citing Fed. R. Civ. P. 15). Insofar as omission could be considered a "new" theory—although it is not new and is treated "the same" as an explicit fabrication—the charge and pleadings were conformed to the evidence that the omission was itself a fabrication.

The remaining fabrication-of-evidence fair trial elements are undisputed. There is no dispute that the information Defendant Lupardo swore to in the criminal complaint was forwarded to prosecutors, as this was the basis for charging Mr. Adams with assault in the second degree, a Class D Felony. (Shapovalova Decl. Ex. H (Pl.'s Ex. 2); *see also* Mot. for Summ. J. Op., ECF No. 70 at 36.) Nor is there a dispute that the information contained in that complaint was likely to influence a jury's decision. (Mot. for Summ. J. Op., ECF No. 70 at 36.) There is also no dispute that, as a result of Officer Lupardo's actions, Mr. Adams suffered a deprivation of life, liberty, or property. *Id*. As a direct and proximate cause of Defendant Lupardo's acts and omissions, Mr. Adams was deprived of his liberty and is entitled to the damages awarded by the jury, including punitive damages. *Garnett*, 838 F.3d 265 (2d Cir. 2016) (upholding jury verdict finding the officer liable for denying plaintiff his right to fair trial and awarding plaintiff nominal and punitive damages).

The jury's determinations were sound and reasonably based on the weight of the evidence, which must be viewed in the light most favorable to Plaintiff. As such, the Court should deny Defendant Lupardo's application to set aside the verdict.

## II.  DEFENDANTS' MOTION FOR A NEW TRIAL RELIES ON PURE SPECULATION, IS UNSUPPORTED BY THE TRIAL RECORD, AND SHOULD BE DENIED.

Defendants argue that the "damages are so disproportionate and unsupported by the

evidentiary record" that "the entire verdict must be questioned" (Mot. at 9), yet they present no compelling arguments to upend the jury's verdict on liability or damages.  Courts in the Second Circuit have consistently held that, when considering a Rule 59 motion, "[a] jury's verdict should 'rarely be disturbed' and a motion for a new trial should be granted only if the court is convinced that the jury's verdict is 'seriously erroneous or a miscarriage of justice.'"  *Haskins*, 2020 WL 6705640, at *5 (Brodie, J.) (denying Rule 59 motion) (quoting *Farrior v. Waterford Bd. of Educ.*, 277 F.3d 633, 635 (2d Cir. 2002)); *see Jennings v. Yurkiw*, 2018 WL 5630454, at *5 (E.D.N.Y. Oct. 31, 2018), *aff'd*, 18 F.4th 383 (2d Cir. 2021) ("The Second Circuit has made clear that such a motion may be granted only 'when the jury's verdict is egregious.'").  Further, the Second Circuit "counsels that trial judges must exercise their ability to weigh credibility with caution and great restraint, as a judge 'should rarely disturb a jury's evaluation of a witness's credibility,' and may not 'freely substitute his or her assessment of the credibility of witnesses for that of the jury simply because the judge disagrees with the jury.'"  *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012) ("What these cases teach is the high degree of deference accorded to the jury's evaluation of witness credibility, and that jury verdicts should be disturbed with great infrequency.").  The Court should reject Defendants' speculative arguments and deny their Rule 59 motion.

### A. Defendants Disregard that the Jury was Specifically Instructed Not to Consider the Source of Punitive Damages Funds.

The trial record does not, as Defendants suggest, "demonstrate that the jury's punitive damage award was based on an improper assumption that punitive damages would be paid by the NYPD." (Mot. at 10.)  Indeed, it firmly undermines that argument.  Defendants conveniently omit this Court's express directive to the jury *not to consider* the payor of punitive damages in determining whether to award any such damages. ██████████████████████████

████████████████████████████████████████████████████ (Smedley Decl. Ex. N (Court

Ex. 7)), the Court replied: ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████    ████████████████████████████████████

████████████    (Smedley Decl. Ex. O (Court Ex. 8); Smedley Decl. Ex. L (Trial Tr. at 842:12–16

(emphasis added)).  Notably, Defendants specifically requested the latter sentence, and neither

objected to the Court's final instruction nor suggested any other additional language. [3]

Now, Defendants ask this Court to assume, despite the Court's clear directive to the jury,

that the jury simply disregarded the Court's instruction.  This request runs headlong into the

long-standing "presumption that juries follow instructions that they are given." *Beautiful Home

Textiles (USA), Inc. v. Burlington Coat Factory Warehouse Corp.*, 2015 WL 2330066, at *4

(S.D.N.Y. May 14, 2015).  Other than the fact that the jury returned a verdict with which they

disagree, Defendants have not, and cannot, offer any evidence to overcome the presumption that

the jury abided by the Court's instruction that "the source of funds should not factor into your

deliberations." (Smedley Decl. Ex. L (Trial Tr. at 842:15–16)).

Courts have resoundingly rejected as "purely speculative" the argument Defendants

advance in support of their Rule 59 motion, even where the record was more favorable to

defendants than it is here.  For example, in *Hernandez v. Hodges*, the jury penned a note to the

court during deliberations, asking: "Will the defendant [police officer] have to pay punitive

damages or any damages out of his own pocket[?]"  2023 WL 5336856, at *4 (N.D. Cal. Aug. 17,

---

[3] The Court asked Defendants if they had a preference on the instruction given in response to the jurors' note, and defense counsel specifically requested that the Court's response include a sentence clearly stating that the payor of punitive damages was not a proper consideration.  That language was added. *See* Smedley Decl. Ex. L (Trial Tr. at 839:24 – 840:8).

████████████████████████████████████

2023).  As here, the court provided a written response, to which both parties agreed.  *Id.*[4]  The defendant moved for a new trial, "speculat[ing] that the jury 'may have awarded more money simply because they believed the payment was coming from deep pockets[.]"  *Id.* at *18.  Notably, the *Hernandez* defendant was also able to point to the trial record, as plaintiff's counsel had questioned the defendant about payment of damages when he was on the stand.  *Id.* at *18–20.  Still, the *Hernandez* court rejected the defendant's motion.  *Id.* at *19.  Here, where the trial record is devoid of testimony on payment of damages, Defendants' contention is even more speculative than that in *Hernandez* and their motion a clearer case for denial.

All of the cases Defendants rely on to argue that a new trial may be granted "for any reason" are inapposite.  Fed. R. Civ. P. 59(a)(1)(A).  For example, the *Sharkey v. J.P. Morgan Chase & Co.* court granted a new trial because the jury awarded an identical amount in back pay and emotional distress damages, demonstrating, in the court's view, that the jury did not follow instructions but "acted out of passion in favor of [plaintiff], or prejudice against [defendant], and not on the basis of the trial evidence and the law provided in the jury charge."  2018 WL 1229831, at *2, *12 (S.D.N.Y. Mar. 5, 2018).  In sharp contrast, the record before this Court reflects the opposite: even though the original verdict form did not include a place for the jury to allocate punitive damages on a defendant-by-defendant basis, ███████████████████████████ ████████████████████████████████████████████████████████ (*See* Smedley Decl. Ex. P (Court Ex. 6); Smedley Decl. Ex. L (Trial Tr. at 837:19–838:5)).  These actions show that this jury assessed punitive damages following careful deliberations and reasoned

---

[4] Notably, this Court's response to the jury's question was even more curative of any potential passion or prejudice than the court's response in *Hernandez*.  There, the court wrote: "The jury has been instructed on damages and should refer to those instructions. No further response is appropriate to this question." *Hernandez*, 2023 WL 5336856, at *4. This Court went even further by explicitly instructing that ██████████████████████████████████████ ████████████ (Smedley Decl. Ex L (Trial Tr. at 842:12–16 (emphasis added)).

calculations for each defendant, leaving no basis for Defendants' claims of "passion" or "prejudice," unlike in *Sharkey*.    Similarly, Defendants' claims that the damages are "disproportionate and unsupported by the evidentiary record" (Mot. at 9) must be rejected.  The jury's allocation of punitive damages demonstrates that they took the respective officers' seniority and, presumably, corresponding levels of liability into account—all of which may be gleaned from the trial testimony—when making their reasoned determination.

### B.   Defendant's Purported Comparison of the "Average" Salary of a Sergeant or Officer to the Verdict is Irrelevant and Misleading.

Defendants claim that it is "abundantly clear that [the jury's] punitive damage awards were motivated by passion, prejudice, and an improper consideration" because, according to Glassdoor.com, the jury awarded "damages against Sergeant Quigley approximately four times the average annual gross salary of an NYPD sergeant, and against Police Officers Lupardo and Delpino almost three times the average annual gross salary of an NYPD police officer."  (Mot. at 10).  Defendants do not even purport to base this argument in evidence, because no such evidence was presented to the jury.

As an initial matter, the "average salary" of a sergeant or officer is irrelevant to this case. At trial, Defendants offered *no* evidence of the "average salary" of an NYPD sergeant or officer, and the law is clear: "The duty [] is on the defendant to present evidence, *before the jury renders its verdict*[,] . . . of his limited resources if he wishes that factor to be weighed in the calculation of punitive damages."  *Provost v. City of Newburgh*, 262 F.3d 146, 163 (2d Cir. 2001) (emphasis added); *Jeffries v. Harleston*, 828 F. Supp. 1066, 1092 (S.D.N.Y. 1993) ("[I]n view of the fact that the defendants presented no evidence as to their financial circumstances, we will not overturn the award on the grounds of financial hardship to the defendants.").  Defendants cannot assume that the jurors knew, outside the evidence, these purported average salaries, let alone that they invoked

10

these salaries at any point during their deliberations.  Further, Defendants' "average salary" figures are misleading, as public records of Defendants' *actual* salaries or financial circumstances from 2022 and prior make plain.[5]  This Court should reject Defendants' attempt to use wholly irrelevant and misleading information on "average salaries," which was never admitted into evidence at trial, to relitigate the jury's reasoned verdict.

For the foregoing reasons, this Court should reject Defendants' motion for a new trial.

## III.   THE PUNITIVE DAMAGES AWARDED AGAINST EACH DEFENDANT ARE REASONABLE.

The punitive damages awarded against each Defendant are not "intrinsically excessive," making remittitur inappropriate in this action.  As an initial matter, this Court's discretion to remit damages is "relatively narrow" (*Jennings v. Yurkiw*, 18 F.4th 383, 389 (2d Cir. 2021)), and only proper in the limited circumstances where a jury award is found to be "so high as to shock the judicial conscience and constitute a denial of justice." *Jennings*, 2018 WL 5630454, at *13 (internal citations omitted).  A straightforward analysis of the damages awards and the reprehensibility evidence in the record leave no doubt that Mr. Adams's award was reasonable and just.

The Supreme Court has established three guideposts to determine whether a punitive damages award is reasonable: (1) degree of reprehensibility of the defendant's conduct, (2) relationship of the punitive damages to the compensatory damages (3) criminal and civil penalties imposed by the state's law for the misconduct in question, and (4) degree of indifference to or

---

[5] *See* https://data.cityofnewyork.us/widgets/k397-673e?mobile_redirect=true (salary data provided by the New York City Office of Payroll Administration).  Indeed, in 2022, Defendant Quigley's total pay was $231,768.92, and thus the punitive damages award against Defendant Quigley was in fact 2.1 times—not 4 times—his gross pay.  The same is true for Defendants Lupardo and Delpino, who grossed $122,497.67 and $122,420.57, respectively, in 2022, and thus the punitive damages awarded against Defendants Lupardo and Delpino is in fact 2.04 times—not 3 times—their gross pay.  Indeed, if a comparison of pay to punitive damages were at all relevant—which it is not—it would only underscore that the jury awarded punitive damages consistently for all Defendants at approximately twice each Defendant's pay for the most recent year.

reckless disregard for the health and safety of others.  *See Jennings*, 18 F.4th at 389 (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996)); *see State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003).  In evaluating punitive damages, courts may also "compare the award to rulings on awards in other cases."  *Id.* at 390.  If a court were to determine that punitive damages were awarded in excess, they could only be reduced "to the maximum amount that would be upheld by the district court as not excessive."  *Rangolan v. Cnty. of Nassau*, 370 F.3d 239, 244 (2d Cir. 2004) (internal citations omitted).

Punitive damages are awarded for "deterrence and retribution."  *State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 416 (2003) (collecting cases).  This is particularly true in Section 1983 cases where courts seek not just to compensate victims for abuse but to "deter[] against future constitutional deprivations, as well."  *See Jennings*, 18 F.4th at 391–92 (quoting *Ciraolo v. City of New York*, 216 F.3d 236, 242 (2d Cir. 2000) (Calabresi, J., concurring) (quotations omitted)).  Punitive damages are available in these cases "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Jennings*, 2018 WL 5630454, at *15 (internal citations omitted).  Defendants neither contest that they acted with malice nor that they violated Plaintiff's federally protected rights; they only assert that the punitive damages awards are conscience-shocking.  However, the punitive damages awards are both reasonable and justified in light of: (a) the reprehensibility of Defendants' conduct, (b) the low punitive-to-compensatory damages ratio, (c) the criminal and civil penalties available, were Defendants to be prosecuted for their conduct, and (d) awards in comparable Section 1983 cases support the conclusion that the jury's punitive damages awards are reasonable.  Remittitur should be denied.

### A. Defendants' Conduct Was Reprehensible and Thus Deserving of Significant Punitive Damages.

Under *Gore*, "the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *State Farm*, 538 U.S. at 419 (citing *Gore*, 517 U.S. at 575). A court may consider "certain 'aggravating factors' that are 'associated with particularly reprehensible conduct' and contribute to the sense that 'some wrongs are more blameworthy than others.'" *Jennings*, 18 F.4th at 390 (citing *Gore*, 517 U.S. at 575–76). Where a defendant was violent or presented a threat of violence, acted with deceit or malice (as opposed to mere negligence), or has engaged in repeated instances of misconduct, punitive damages are especially appropriate. *See Lee v. Edwards*, 101 F.3d 805, 809 (2d Cir. 1996) (citing *Gore*, 517 U.S. at 575–76).

### i. Defendants' Actions Threatened Violence.

While Defendants argue that no evidence demonstrates that Sergeant Quigley, Officer Delpino, or Officer Lupardo engaged in violent conduct, they fail to address the "threat of violence" resulting from Defendants' conduct. After handcuffing Mr. Adams, Sergeant Quigley said, "[S]trip search him," and then asked Mr. Adams whether he "want[ed] to go down the steps?" (*See* Smedley Decl. Ex. L (Trial Tr. at 249:23–24)). After arrest without probable cause, Mr. Adams—who was handcuffed behind his back and facing opposite a narrow concrete staircase—perceived Sergeant Quigley's question as threatened violence. (*See* Smedley Decl. Ex. L (Trial Tr. at 306:24-307:2) (Adams Cross)). Instead of addressing this threat, Defendants focused on Officer Delpino's injuries following the stairwell fall, citing them as "notabl[e]" evidence that no violence occurred. (*See* Mot. at 12). Defendants cite no authority for the proposition that Defendant Delpino's injuries have any bearing on the assessment of punitive damages. While Defendant Delpino's injuries have no bearing on this case, they also are not, as

13

stated by Defendants, the only injuries sustained from the stairwell incident. (*See* Shapovalova Decl. Ex. C (Pl.'s Ex. 1, at 00:30–00:36) (showing Mr. Adams limping following the fall); *see also* Smedley Decl. Ex. L (Trial Tr. at 227:12–14) (where Mr. Adams explains, "I just remembered being in pain and agony and Officer Delpino hoisting me up[.]").)

Further, the false charges made possible by Defendants' fabricated evidence carried with them months of threat to the Plaintiff's personal safety, which the jury was at liberty to consider in support of punitive damages. Plaintiff testified to this threat of violence—first at the precinct and going forward thereafter while the false charges were pending—accompanying the fact that Defendants labeled Plaintiff as someone who had assaulted a police officer. (*See* Smedley Decl. Ex. L (Trial Tr. at 251:21-24) ("Every time I saw a patrol car and slow down, it was just like in my mind that it just felt like -- pardon my language, oh, my God, there is Sergeant Quigley, he sent somebody to jump me.")).

### ii. The Jury Found that All Three Defendants Acted with Malice and Deceit.

Defendants do not contest the presence of one aggravating factor: that the jury determined all three officers acted with malice and deceit towards Mr. Adams. (*See* Mot. at 13.)

The Special Verdict Form documents that the jury did not accept that Sergeant Quigley had reason to believe, *even if mistaken*, that Mr. Adams possessed marijuana. (*See* Smedley Decl. Ex. K (ECF. No. 116-1, Special Verdict Form)). The jury concluded that Sergeant Quigley *knew* that Mr. Adams did not possess marijuana, that he knowingly arrested Mr. Adams for possession of marijuana without probable cause, and that Sergeant Quigley then fabricated evidence by telling the District Attorney Mr. Adams possessed marijuana when Sergeant Quigley knew that was a lie. (*Id.*, Question 2). Similarly, the Special Verdict Form shows that the jury concluded that Sergeant Quigley, Officer Lupardo, or Officer Delpino did not reasonably believe, "*even if mistaken*," that

14

Mr. Adams "pushed or lunged at Officer Delpino in the stairway." (*Id.* (emphasis added).) The jury thus necessarily found that all three officers knew Mr. Adams did not assault Officer Delpino, but nonetheless intentionally fabricated evidence by conveying false information to prosecutors for the purpose of charging Mr. Adams with felony assault on an officer. These jury findings are sufficient to support the presence of the aggravating factors of malice and deceit for all three Defendants.

Significant evidence in the record supports the jurors' conclusions. For example, Mr. Adams testified that, once he arrived at the precinct, Sergeant Quigley threatened him, saying, "you're in big trouble, one of my officers went to the hospital," and then told Mr. Adams, "[w]e can make this right. All you have to do is signoff this medical or make this statement and I'll let you go with your brother and your friend." (Smedley Decl. Ex. L (Tr. at 232:7–16)). When Mr. Adams refused to sign the form indicating he did not need medical attention, Sergeant Quigley denied him medical care and drafted a record falsely stating that Mr. Adams "was offered and refused medical treatment." (*See* Smedley Decl. Ex. Q (Pl.'s Ex. 5)). The jury reasonably concluded that threatening to wrongfully charge someone with assaulting an officer unless they certify that they do not need necessary medical care evinces malice.

The constantly shifting narratives between Defendants further demonstrates intentional malice and continuous deceit. *See id.* at 394 ("Taking the officers' deliberate concealment of evidence into account only heightens the degree of malice . . . and further confirms that the punitive damages were supported by the record evidence"). For example, in their efforts to morph the accidental tumble down the stairs into an officer assault charge, all three Defendants provided accounts of the incident that were inconsistent with one another, with video evidence, and even with their own prior statements:

15

- *Compare* Shapovalova Decl. Ex. C (Pl.'s Ex. 1 (Stairwell Video)) *with*

- Smedley Decl. Ex. N (Pl.'s Ex. 7 at 1) (Quigley Arrest Report) (stating that Mr. Adams "lunged with his whole body into the *bottom landing*" (emphasis added)) *and*

- Smedley Decl. Ex. R (Pl.'s Ex. 3 at 2) (Quigley's Memo Book) (stating that Mr. Adams "lunged off the *first step*" (emphasis added)) *and*

- Smedley Decl. Ex. R (Pl.'s Ex. 3 at 7) (Lupardo's Memo Book) (stating that "Adams attempted to throw himself down the stairs") *and*

- Smedley Decl. Ex. L (Trial Tr. at 446:1–5, 18–21) (Lupardo Direct) ("Q And you also don't mention that Andre Adams nudged his shoulder into Officer Delpino; is that right? A Well, I feel like lunge and nudge are sort of equivalent[.]") *and*

- Smedley Decl. Ex. R (Pl.'s Ex. 3 at 11) (Delpino's Memo Book) (stating that Mr. Adams "intentionally push[ed]" him down the stairs).

Similarly, Sergeant Quigley could not keep his story straight regarding the fabricated evidence of the marijuana joint.

- *Compare* Smedley Decl. Ex. L (Trial Tr. at 544:12–14) (Quigley Direct) ("Q And you also testified that you tilted your head to look for it; you didn't bend down; right? A That's correct.") *with*

- Smedley Decl. Ex. R (Pl.'s Ex. 3, at 2) (Quigley Memo Book) ("The moment I was able to cuff him, I reached down to pick the marijuana up for evidence but was unable to do so[.]") *and*

- Smedley Decl. Ex. L (Trial Tr. at 505:18–22) (Quigley Direct) ("A . . . I saw that exact object as I approached him face-to-face and I looked down in between his legs and that object that I saw in his hand was now on the floor, and I knew it was marijuana at that moment when I was face-to-face with him and the marijuana cigarette.").[6])

---

[6] Courts have also found that when defendants could not recall key events of a lawsuit, it supported a finding of deceit. *See Theodat v. City of New York*, No. 16-CV-3977, 2019 WL 4385794 (E.D.N.Y Sept. 13, 2019) (evidence that defendant was "lying when he testified that he did not remember" the subject events of the lawsuit supported finding of deceit or malice), *aff'd*, 818 F. App'x 79 (2d Cir. 2020). (*See* Smedley Decl. Ex. L (Trial Tr. at 518:23–519:4) (Quigley Direct) ("Q you also gave a statement to an individual named Butler about this incident on October 10th, 2018; is that right? Do you recall that? A I don't recall the date or the person's name, no. Q Do you remember giving a statement about this incident in the month of October 2018 or thereabouts? A No."); *see also* Smedley Decl. Ex. L (Trial Tr. at 617:7–12 (Delpino Direct) ("Q And you also don't remember if you searched Mr. Adams at any point; right? A That is correct. Q You don't recall whether you frisked Mr. Adams when you were there? A I do not remember."); *see also* Smedley Decl. Ex. L (Trial Tr. at 630:10–23) (Delpino Direct) ("Q Now, you claim that Mr. Adams just intentionally lunged at you, causing you to go down the stairs, but you didn't ask this 120 Precinct officer for help, right? A I do not remember.  Q And you didn't call over for another officer to say, Come help me with this guy? A I do not remember.  Q And you didn't go over the radio yourself to ask for another officer to come

The record evidence of Defendants falsely arresting Mr. Adams using fabricated evidence of marijuana, stating to prosecutors that Mr. Adams assaulted an officer following an accidental fall down the stairs, and making Mr. Adams choose between medical care and prosecution comprise acts of malice and deceit that justify the punitive damages awarded by the jury. *See Jennings*, 18 F.4th at 391 ("The reprehensible nature of the officers' conduct is underscored by the elaborate steps they took to cover up their misconduct.").

### B. The Compensatory-to-Punitive Damages Ratios Are Well Within Constitutional Limits.

The second *Gore* factor asks "whether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct as well as the harm that actually has occurred." *Jennings*, 18 F.4th at 391–92 (citing *Gore*, 517 U.S. at 581). While the Supreme Court has resisted creating a bright-line for constitutionally permissible ratios, it has indicated that single-digit ratios are likely to satisfy due process. *State Farm*, 538 U.S. at 425. And the Second Circuit has opined that, in Section 1983 cases such as this one, where a "constellation of intentional misbehavior by the officers" is evident from the record, there is "nothing untoward about [a] 1:4 ratio between compensatory and punitive damages." *Jennings*, 18 F.4th at 391–92. Further, even higher ratios may still comport with due process where "a particularly egregious act has resulted in only a small amount of economic damages," *State Farm*, 538 U.S. at 425, or where necessary to effectuate "the deterrent function of punitive damages," *Jennings*, 18 F.4th at 391–92.

Defendants' argument as to this factor is belied by the distortion their calculations require. Unable to escape the fact that the jury's punitive damages award against each Defendant is

---

and help you after you say you were just pushed down the stairs? A I do not remember. Q And you don't remember telling this 120 Precinct officer, This guy just assaulted me? You don't remember that either? A I do not remember.").)

proportionately within due process limits under any applicable standard—whether *State Farm*, *Gore*, or *Jennings*—Defendants ask this Court to compare the *aggregate* amount of punitive damages against the compensatory damages award. Their request is in direct contravention of what is required within this Circuit:

> [B]ecause compensatory damages are assessed on a joint-and-several basis while punitive damages are assessed individually and with an intent to punish and deter a particular defendant, it is 'counterintuitive to prorate the collective compensatory damages amount and compare that to an individual punitive damages amount, *or to disregard the individual nature of punitive damages*.'

*Saleh v. Pretty Girl, Inc.*, 2022 WL 4078150, at *28–29 (E.D.N.Y. Sept. 6, 2022) (emphasis added) (quoting *Magalios v. Peralta*, 2022 WL 407403, at *5 (S.D.N.Y. Feb. 10, 2022), *aff'd*, 2023 WL 4618349 (2d Cir. 2023)). The appropriate measure is to "compare the individual punitive awards against the total compensatory award."[7] *Id.* at *29.

Applying the proper methodology and comparing each Defendant's punitive damages award to the compensatory amount of $125,000, the reasonableness of the awards is abundantly clear. For Defendants Delpino and Lupardo, who each were assessed $250,000 in punitive damages, the compensatory-to-punitive ratio is an objectively reasonable 1:2. *State Farm*, 538 U.S. at 425. Sergeant Quigley, who supervised the other two Defendants during the misconduct at issue, was assessed $500,000 in punitive damages, resulting in a ratio of 1:4, a ratio with which the Second Circuit has expressed no concern. *See Jennings*, 18 F.4th at 391–92. Even the 1:8 ratio of compensatory to *aggregate* punitive damages—though inapplicable here— is still a single-digit ratio unlikely to trigger the concerns of *State Farm*. 538 U.S. at 425.

The Court should also bear in mind that punitive damages also take into account potential

---

[7] While Defendants argue that a multiplier is not the appropriate tool in cases where the compensatory damages are nominal, that is irrelevant to the situation here, where the jury issued a six-figure compensatory damages award.

harm, i.e., "the harm *likely* to result from the defendant's conduct." *See Jennings*, 18 F.4th at 389 (emphasis added); *Gore*, 517 U.S. at 581.  Because of charges brought against him, which the jury determined had no basis in fact (*see* Smedley Decl. Ex. K (ECF. No. 116-1, Special Verdict Form)), Mr. Adams spent over 28 hours in pre-arraignment custody, spent an additional 24 in post-arraignment custody, and then had to make seven subsequent court appearances over a period of several months in an effort to have those charges dismissed.  (*See* Smedley Decl. Ex. L (Trial Tr. at 243:23–244:1, 244:10–14)).  Moreover, had Defendants' tortious plan to prosecute Mr. Adams for assaulting an officer, resisting arrest, obstructing governmental administration, and criminal possession of marijuana succeeded, he would have faced significant jail time.  (*See* Shapovalova Decl. Ex. H (Pl.'s Ex. 2)).[8]  The jury considered and could appropriately have credited evidence of these charges against Mr. Adams (who also testified that, if convicted, he would have faced up to seven years in prison).  (*See* Smedley Decl. Ex. L (Trial Tr. at 252:9–13).

Applying the correct method for assessing the ratio of punitive to compensatory damages, and considering all relevant factors including potential harm to Plaintiff, the $500,000 and $250,000 punitive damages awards are demonstrably within the range of reason under *Gore*, *State Farm*, and *Jennings*.

### C.  Punitive Damages in Comparable Cases Confirm that the Jury's Award is Reasonable.

Contrary to Defendants' assertions (Mot. at 15-18), comparable Section 1983 cases in this Circuit affirm that the punitive damages awards against Defendants are reasonable.  *See Hughes v. Patrolmen's Benev. Ass'n of City of N.Y., Inc.*, 850 F.2d 876, 883 (2d Cir. 1988) (declining to

---

[8] If charged, Mr. Adams would have faced between two and 10 years for assault, up to one year for resisting arrest, and up to one year for obstruction of governmental administration.  In evaluating damages, courts also consider the "criminal and civil penalties imposed by the state's law" for the officer's misconduct. *Jennings*, 18 F.4th at 389. Here, Defendants fabricated evidence and made false statements to prosecutors, both Class E felonies holding criminal penalties of up to four years in prison.

19

remit punitive damages of over $900,000 (adjusted for inflation) in a Section 1983 case involving malicious conduct but no threatened or actual violence); *see also McClarin v. City of New York*, No. 16-CV-6846-FB-SJB, 2023 WL 5831059, at *8 (E.D.N.Y. Sept. 8, 2023) (upholding $775,000 punitive damages award because compensatory-to-punitive ratio for each defendant was within acceptable limits and opining that falsifying evidence was "undoubtedly reprehensible enough to support the awards"). Defendants cite a series of cases they deem "comparable," but analysis of their facts and holding reveal that none are apposite, and none counsel toward remittitur in this case.[9] In addition, Defendants do not account for inflation when discussing any of the cases, most of which are ten years old or older. Also of note is that Defendants engaged in conduct for which juries routinely award multimillion dollar verdicts in the wrongful conviction context. *See Restivo v. Hessemann*, 846 F.3d 547, 588 (2d Cir. 2017) (denying remittitur of an $18 million damage award for wrongful because the "jury award [was] in line with other approved awards in wrongful conviction cases.") (collecting cases).

Based on the foregoing, Defendants have failed to demonstrate that, when properly assessed under *Gore*, *State Farm*, and *Jennings*, the individual punitive damages awards against

---

[9] *See Nelson v. County of Suffolk*, No. 12CV5678DRHAKT, 2019 WL 3976526 (E.D.N.Y. Aug. 22, 2019) (where, following the report of the theft of a missing bracelet at a local mall, with a store employee identifying for the police plaintiff as the suspect, an officer arrested plaintiff, who was held for some time but later had all charges dropped, the court suggested a remittitur of less than $30,000); *see also Stampf v. Long Island R. Co.*, 761 F.3d 192 (2d Cir. 2014) (involving no police officers but instead a malicious prosecution based on a co-worker's false statements accusing plaintiff of sexual assault); *see also Haskins*, 2020 WL 6705640, at *18 (denying a motion to set aside punitive damages awarded to plaintiff, and noting that the award was "lower than some other awards found to be appropriate for similar claims"); *see also Lee v. Edwards*, 101 F.3d 805 (2d Cir. 1996) (court awarded punitive damages "solely on account of malicious prosecution" for a nonviolent interaction with the police lasting only two hours, and not on, as implied by Defendants, the state-law assault and battery claims); *see also Morse v. Fusto*, No. 07-CV-4793 CBA RML, 2013 WL 4647603 (E.D.N.Y. Aug. 29, 2013), *aff'd*, 804 F.3d 538 (2d Cir. 2015) (finding a "close question" as to whether defendant-prosecutors had sufficient evidence to support their criminal case, but concluding they at least had enough evidence to view the plaintiff with suspicion, justifying remittitur of punitive damages from $750,000 to $250,000 for fabrication of evidence); *Manganiello v. Agostini*, No. 07 CIV.3644 HB, 2008 WL 5159776 (S.D.N.Y. Dec. 9, 2008), *aff'd sub nom. Manganiello v. City of New York*, 612 F.3d 149 (2d Cir. 2010) (upholding punitive damages in a malicious-prosecution case, and noting that the ratio of compensatory to punitive damages was small); *see also Robertson v. Sullivan*, No. 07-CV-1416, 2010 WL 1930658 (E.D.N.Y. May 12, 2010) (declining to remit award with compensatory to punitive ratio of 1:10, and finding that the "damages awarded are, if anything, at the low end of the range of reasonable awards").

each Defendant for their intentionally malicious and deceitful conduct were disproportionate or inappropriate, let alone "conscience shocking."  Certainly, fabricating evidence and making false statements to prosecutors—actions that not only could have resulted in criminal charges for Defendants but also could have placed Mr. Adams behind bars for up to 10 years—constitutes conduct deserving of far-higher punitive damages than the patently offensive $300 suggested by Defendants.  (*See* Mot. at 18).  As the Second Circuit recognizes, Section 1983 cases in particular are appropriate context for significant punitive damages as deterrence.  This Court should uphold the jury's reasoned assessment and find that the punitive damages awards are not excessive and deny remittitur.

## **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that the Court deny Defendants' motions in their entirety.


Dated: New York, New York
          November 10, 2023


Joel Wertheimer                                              Angela A. Smedley
WERTHEIMER LLC                                        WINSTON & STRAWN LLP
14 Wall Street, Suite 1603                              200 Park Avenue
New York, NY 10005                                     New York, NY 10166
(646) 720-1098                                              212-294-6700
joel@joelwertheimer.com                             asmedley@winston.com


*/s/Joel Wertheimer*                                       */s/Angela A. Smedley*
Joel Wertheimer                                              Angela A. Smedley